ROSS, Respondent, *v.* SAYLOR, Appellant.

(No. 2,695.)

(Submitted October 25, 1909.  Decided November 8, 1909.)

[104 Pac. 864.]

*Real Property—Agreement to Convey—Breach—Measure of Damages—Instruction—Harmless Error—Complaint—Striking Pleadings—Verdict—Sufficiency.*

Real Property—Agreement to Convey—Measure of Damages—Bad Faith.
1.  Section 6054, Revised Codes, declaring the measure of damages in an action for breach of an agreement to convey an estate in real property, and authorizing recovery of additional damages in case of bad faith, applies to an agreement to convey an equitable as well as a legal estate.

Same—Complaint—Sufficiency.
2.  Complaint examined and *held* not to state two separate and distinct causes of action, to-wit, one for breach of a contract to convey real property, and one for damages in tort, as for a fraud, but one to recover damages for a breach of oral contract alleged to have been entered into.

Same—Statute of Limitations—Inapplicability of Defense—Striking Pleading—Harmless Error.
3.  Plaintiff's action having been one to recover damages for breach of an oral agreement to convey real property, and not one based upon fraud, the striking of defendant's plea that it was barred by the statute fixing the time within which actions for relief on the ground of fraud must be brought, was not prejudicial.  The defense was inapplicable.

Same—Bad Faith—Evidence—Admissibility.
4.  Where plaintiff sought to recover damages because of defendant's failure to carry out an oral agreement to convey to him an estate in certain lands in Nebraska, represented by certificates which entitled the holder to the land therein named, and which had been assigned to plaintiff in exchange for land owned by him in this state, but which Nebraska lands had theretofore been sold by defendant's agent to another, evidence that defendant had told plaintiff that the title to the land in Nebraska was clear, was admissible to show the bad faith of defendant in the transaction.

Same—Bad Faith—Proper Cross-examination.
5.  Defendant's wife, after having testified in his behalf, was asked on cross-examination to identify certain letters written by her as his agent.  The letters disclosed the fact that defendant knew that his Nebraska land had been sold by his agent prior to the date of his agreement to convey to plaintiff.  *Held,* that the letters were properly admitted on cross-examination.

Same—Measure of Damages—Instructions—Inapplicability—Harmless Error.
6.  The giving of an instruction on the measure of damages, which, though inapplicable to the case as tried, could not have added anything to the measure of relief to which plaintiff was clearly entitled

under section 6054, Revised Codes, and the state of facts proven, was not sufficient to work a reversal of a judgment in his favor, nothing appearing that a different result could be reached on a retrial.

Same—Bad Faith—Measure of Damages—Expenses Recoverable.

7. *Held*, in an action to recover damages for a breach of an agreement to convey real property, that expenses incurred by plaintiff in removing his family to Nebraska preparatory to taking possession of lands sold to him by defendant, as well as counsel fees and court costs paid by plaintiff in defending an action to quiet title, brought against him by defendant's prior grantee, were recoverable as "expenses properly incurred in preparing to enter upon the land," under section 6054, Revised Codes.

Same—Expenses Recoverable—Verdict—Sufficiency.

8. In the absence of an objection to it at the trial, the jury's verdict in a certain sum for "necessary expenses in preparing to take possession of the land," instead of for "expenses properly incurred,"—the words of the statute (sec. 6054, Revised Codes) and those used in the court's instructions,—was insufficient.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

Action by Evan A. Ross against C. L. Saylor. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Modified and affirmed.

*Messrs. Blackford & Blackford* and *Mr. Rudolf Von Tobel* filed a brief in behalf of Appellant; *Mr. W. M. Blackford* argued the cause orally.

The complaint states two causes of action in a single count, each of which is inconsistent with the other,—one on contract and the other in tort, for damages, both on account of his failure to obtain title to the land described in the Nebraska land sale contracts assigned by appellant to respondent. These causes of action were improperly united. (*Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 298, 72 Pac. 642; *Cosgrove* v. *Fisk*, 90 Cal. 75, 27 Pac. 56; *Stark* v. *Wellman*, 96 Cal. 400, 31 Pac. 259.) It was prejudicial error for the trial court to overrule the demurrer interposed on that ground. (*Stark* v. *Wellman*, 96 Cal. 400, 31 Pac. 259; *Thelin* v. *Stewart*, 100 Cal. 372, 34 Pac. 861.)

The written assignments show on their face to be nothing more than the sale, assignment and transfer by appellant of all his

"right, title and interest" in the Nebraska land. There are no words of warranty, no covenants of seisin or of future enjoyment contained in either of the assignments. Under this state of facts respondent cannot recover when there is no fraud in the sale. (*Griel* v. *Lomax*, 86 Ala. 132, 5 South. 325.) "The rule of *caveat emptor* governs purchasers of land as well as of personal property. The vendee must take care that the title he buys is sound. If he has any doubt concerning it, he may require covenants to secure the title as a condition of his purchase. If he makes no such requirement, he takes the risk of the title upon himself, in the absence of fraud, and cannot hold the vendor responsible for its failure." (*Union Pacific Ry. Co.* v. *Barnes*, 64 Fed. 80, 12 C. C. A. 48; *Patton* v. *Taylor*, 7 How. 133, 159, 12 L. Ed. 637; *Van Rensselaer* v. *Kearney*, 11 How. 297, 322, 13 L. Ed. 203; *Noonan* v. *Lee*, 2 Black, 499, 508, 17 L. Ed. 278; *Peters* v. *Bowman*, 98 U. S. 56, 60, 25 L. Ed. 91.)

All of respondent's evidence relating to the oral agreement of warranty was admitted over the objection of the appellant. This evidence was incompetent, and having been objected to, the whole evidence stands as if such evidence had been excluded, if incompetent. (Hayne on New Trial and Appeal, sec. 98, p. 273; *Frauenthal* v. *Bridgeman*, 50 Ark. 348, 7 S. W. 388; *McCloud* v. *O'Neall*, 16 Cal. 397; *Janson* v. *Brooks*, 29 Cal. 223; *Watt* v. *Nevada Cent. R. Co.*, 23 Nev. 154, 62 Am. St. Rep. 772, 44 Pac. 424, 46 Pac. 52, 726; *Vietti* v. *Nesbitt*, 22 Nev. 390, 41 Pac. 152.)

Counsel fees paid in defending another's suit against respondent to quiet the title to the Nebraska lands, and the court costs paid in defending that suit and in settling the judgment for costs therein, are not recoverable as damages for "the expenses properly incurred in preparing to enter upon the land" as a punishment for bad faith in the breach of a contract of the kind mentioned in section 6054, Revised Codes; neither can it be said that the expenses paid by respondent in removing his

family from Montana to Nebraska can be recovered as such damage under that provision, in case of bad faith.

There was a brief in behalf of Respondent by *Messrs. De Kalb & Mettler,* and oral argument by *Mr. H. L. De Kalb.*

The contract to convey good title was oral, but did not constitute what appellant is pleased to style an oral warranty. . The contract to convey good title to the Nebraska land could not be met short of a conveyance of such title as was contracted for. (*Willard* v. *Smith,* 34 Mont. 494, 87 Pa. 613; *Close* v. *Zell,* 141 Pa. 390, 23 Am. St. Rep. 296, 21 Atl. 770.) The contract was not superseded by the written assignments. The written assignments might have been intended to consummate the contract, but amounted to nothing, for the reason that they did not meet the terms thereof. (*Walker* v. *France,* 112 Pa. 203, 5 Atl. 208; *Close* v. *Zell, supra.*) The assignment of the Nebraska lands did not merge the previous oral contract, because the deed was wholly inoperative as a contract. The courts have held that where there was no title to convey, the vendee may fall back on the contract to convey. (See *Haynes* v. *White,* 55 Cal. 38.) For a case almost on all-fours with the one at bar, and where the court held there was no merger of the previous oral contract, see *Close* v. *Zell, supra;* also, *Walker* v. *France, supra.* The case of *Close* v. *Zell* has been cited with approval in *McGowan* v. *Bailey,* 146 Pa. 342, 572, 23 Atl. 372, 387; *Kemp* v. *Pennsylvania Ry. Co.,* 156 Pa. 430, 26 Atl. 1074; *Elkin* v. *Timlin,* 151 Pa. 491, 25 Atl. 139. The charge in the complaint that Saylor transferred the Nebraska lands to Ross, well knowing that he had previously parted with his title thereto, was sufficient to entitle respondent to recover the element of damage allowed by section 6054, Revised Codes. (*Clark* v. *Yocum,* 116 Cal. 515, 48 Pac. 498; *Messer* v. *Hibernia Savings & Loan Society,* 149 Cal. 122, 84 Pac. 835; *Yates* v. *James,* 89 Cal. 474, 26 Pac. 1073.)

MR. JUSTICE SMITH delivered the opinion of the court.

It appears from the transcript that on the fourteenth day of November, 1904, the plaintiff was the owner of one hundred and sixty acres of land situated in Fergus county, in this state, and the defendant had in his possession two certain certificates, called "State University Educational Land Sale Contracts," issued by the state of Nebraska, showing his right to become the owner of certain land in Webster county, in that state, upon the payment of the sum of about $500, which was the balance of the purchase price thereof. While there is no very specific testimony on the subject, the record of their subsequent conduct discloses the fact that the parties entered into an oral agreement pursuant to which the plaintiff deeded to the defendant the land in Fergus county, and the defendant gave to the plaintiff assignments of the Nebraska land certificates, together with the sum of $500 in money. The plaintiff testified that, at the time of the transfers, the defendant said: "This land is absolutely clear in title; and, if anything turns up at any time between you and it, I will stand between you and it." It further appears that, upon going to Nebraska with his family to take possession of the land, he found one Norris in possession of the same, claiming to be the owner thereof; that, upon a claim to said land being made by Ross by virtue of the certificates so assigned to him by Saylor, Norris began an action in the district court of Webster county, Nebraska, against the parties to this action, as a result of which the court decreed that Norris was the owner of the land in question and that his title thereto should be quieted as against any claims of either of the parties to this action; that the plaintiff expended $100 for counsel fees in defending the Nebraska action, paid $173.55 court costs pursuant to the judgment entered in favor of Norris, and expended $150 in removing his family from Montana to Nebraska. The object of this action is to recover the value of the Fergus county land, which is alleged to be $2,500, less $500 paid to the plaintiff by the defendant, together with the several amounts ex-

pended by the plaintiff in endeavoring to take possession of the Nebraska land, as hereinbefore stated. The principal fact contention of the defendant at the trial was that the plaintiff took said Nebraska land certificates and the sum of $500 in exchange for the Fergus county lands with full knowledge of the facts in relation to the land certificates, and that no agreement was made by him to hold the plaintiff harmless in case the title to the Nebraska land should be found to be defective. The cause was tried to the district court of Fergus county sitting with a jury, and the result was a verdict in favor of the plaintiff for the sum of $2,500, which sum the plaintiff confesses is $76.45 in excess of what the evidence will justify. Judgment was entered in favor of the plaintiff for $2,443, from which judgment and an order denying a new trial the defendant has appealed to this court.

The first contention of appellant is that the complaint states two separate and distinct causes of action, viz., one for damages on contract, and the other for damages in tort, and that the district court erred in overruling a motion made by him to compel the plaintiff to state these causes of action separately and number the same. The position assumed by the respondent in this court, and the one apparently taken by him in the court below, is that the complaint states but one cause of action, to-wit, an action for breach of an agreement to convey an estate in real property for the purpose of recovering the damages provided for by section 6054, Revised Codes, which section reads as follows: ''The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.'' Respondent contends that the estate agreed to be conveyed to him was of no

value whatsoever, and that the only consideration received by him was the sum of $500, which amount was to be paid to the state of Nebraska, and that the gravamen of the complaint is that the defendant agreed to convey an estate in real property, while, in fact, he conveyed no estate whatever.

We have carefully examined the complaint, and feel satisfied that the only reasonable interpretation thereof is that contended for by the respondent. If the agreement between the parties had been for an exchange of the Montana lands which the plaintiff owned, for the actual lands in Nebraska, and the defendant had had the legal title to the latter, we have no doubt that a refusal on the part of the defendant to transfer the Nebraska lands to the plaintiff would create a liability for "breach of an agreement to convey real property" in accordance with section 6054, *supra,* provided, of course, that the agreement as entered into was valid and binding upon the defendant. That section reads, as aforesaid, "An agreement to convey an estate in real property"; and we can see, in principle, no difference between an agreement to convey a legal estate and an agreement to convey an equitable one. We therefore hold that the court below was correct in its interpretation of the complaint.

The foregoing also applies to that assignment of error found in appellant's brief which relates to the action of the court in refusing to strike out certain allegations of damages claimed by the plaintiff. The complaint alleges as follows: "That the defendant, in making said sale and transfer to this plaintiff, acted in bad faith, and induced plaintiff to enter into said agreement by fraud and false representations, well knowing that at the time he represented to the plaintiff that he, the said defendant, was seised and possessed of the said lands in the state of Nebraska, that he, the said defendant, had formerly, through an agent, sold, transferred, and assigned all his rights and title in and to said lands to one Charles S. Norris, and received payment therefor, and said representations were made by defendant with intent to deceive and defraud plaintiff, and that plaintiff relied upon the said representations of defendant, and, believ-

ing them to be true, entered into said contract with the defendant, to plaintiff's prejudice and injury as herein set forth." We think this is a sufficient allegation of bad faith to enable the plaintiff to claim the damages provided for in the latter portion of section 6054, *supra*. Without reciting the testimony on the subject, we may say that in our judgment the charge of bad faith was fully substantiated, and the jury must have so found.

One of the defenses interposed by the defendant in his answer reads as follows: "That the cause of action on the ground of fraud alleged in plaintiff's third amended complaint is, and was at the time of the commencement of this action, barred by the statute of limitations, and is, and was at said time, barred by subdivision 4 of section 524 of the Code of Civil Procedure, as amended." The court, on motion of the plaintiff, struck this defense from the answer. The section referred to relates to actions for relief on the ground of fraud or mistake, and, as we interpret the complaint, could have no application to the cause of action upon which the plaintiff relied; and therefore the defendant was not prejudiced in any of his legal rights by having the same stricken from his answer, although it may be questionable whether, in view of the fact that in this state the bar of the statute of limitations is an affirmative defense (see *American Mining Co., Ltd.*, v. *Basin & Bay State Min. Co., ante*, p. 476, 104 Pac. 525), it is strictly proper practice to strike such an allegation from the answer. It will readily be seen that an allegation of this nature might raise a question of fact, and therefore an order striking the same would be prejudicial error.

In addition to the testimony of the plaintiff heretofore quoted, he was allowed, over objection of the defendant, to testify as follows: "I says, 'That land is clear in title, is it?' He says: 'Yes, sir; it is. I will stand between you and any loss.' I says, 'I will accept the proposition.' " Appellant contends that the reception of this evidence was error in that it tended to vary the terms of a written contract by parol, to-wit, the written assignments of the Nebraska land contracts. No other objec-

tion was urged at the trial. No claim is made by the plaintiff
that any preliminary written contract of sale was entered into.
He said: "It was an even trade. I deeded my land for $500
paid me by Mr. Saylor and the assignment of these State Uni-
versity educational contracts and the bill of sale of the crop,
one-third of the crop that was on the Nebraska land, and that
completed the transaction. Then I proceeded to move to
Nebraska, and Mr. Saylor took possession of the land that I
had conveyed to him. I had no other agreement in writing
about this trade; none at all." In the view we take of the
case, it was not necessary for the plaintiff to prove an oral war-
ranty of title, and that this was the theory upon which the
cause was tried in the court below is evidenced by the fact
that the district judge remarked during the course of the trial:
"The gist of this action is: Did Saylor, through an agent as
alleged, assign these contracts to Norris before he assigned them
to this man? If they make that out, they have a good cause of
action, whether they had any conversation or not. It looks to
me like an executed oral contract." We concur in these views.
The testimony received was competent on the issue of bad faith.
It tended to show a concealment of the fact that Saylor's inter-
est in the Nebraska lands had previously been transferred to
Norris. The record, including therein the defendant's answer,
discloses that the latter undertook to convey to the plaintiff
some interest, some estate, in the Nebraska land. As a matter
of fact he had, before that time, conveyed to Norris, through
his agent, all of his right, title, and interest in said land. He
had nothing left to convey, and, as was said by the supreme
court of Pennsylvania, in *Richardson* v. *Gosser*, 26 Pa. 335: "It
is hard to see how we could deny the plaintiff's right to recover
and at the same time satisfy the demands of common justice."
As it is not contended that the original agreement between the
parties was within the statute of frauds, we have given that
question no consideration, contenting ourselves with a decision
of the matters found in the briefs of counsel.

During the cross-examination of the defendant's wife, who was a witness in his behalf, and after she had testified that she wrote most of the letters for defendant to his agent in Nebraska who had charge of the sale of the land in that state to Norris, and had shown an intimate acquaintance with the details of the whole transaction, she was asked to identify certain letters from her husband to the agent. These letters disclosed the fact that Saylor had full knowledge that his interest in the land had been sold to Norris before the transfer of the certificate to Ross. After being identified, the letters were offered in evidence by plaintiff, and objected to as not proper cross-examination. The matter of their reception at that time was largely in the discretion of the court; and we find no abuse thereof in overruling the objection. (See, also, Revised Codes, sec. 8027.)

Defendant requested the court to instruct the jury that none of the elements of special damages claimed by plaintiff could be recovered by him. This the court refused to do, and error is assigned. The objection to these items of damages, however, is based upon defendant's contention that this is not an action to recover for breach of an agreement to convey an estate in real property, and, as we have decided that question adversely to him, it follows that his requests for instructions were properly refused.

The court, among other instructions, gave the following: ''If you believe from a preponderance of the evidence that the defendant, Saylor, represented to the plaintiff, Ross, that his title and interest in the Nebraska lands was all right, and that he could procure patent for the said lands upon the payment of the sum of $504, or that he agreed to make good in case title was not right, and that Ross could not secure possession of the said lands, then you are instructed that you should find for the plaintiff, and that his detriment or loss in the case is the price paid, which in this case is the value of the one hundred and sixty acres of Fergus county land, agreed by both parties to be the sum of $2,000. Otherwise you will find for the defendant, which is, in effect, a finding that the plaintiff has suffered no damage for which the defendant is responsible.''

The record shows that the defendant "excepted" to the giving of this instruction, stating his reasons. This method of procedure is not in accordance with the rule laid down by this court in *Robinson* v. *Helena Light & Ry. Co.*, 38 Mont. 222, 99 Pac. 837, and *Yergy* v. *Helena Light & Ry. Co.*, *ante*, p. 213, 102 Pac. 310; but we are not inclined to invoke the rule ourselves in the absence of a suggestion from the respondent.

As will be observed, the instruction quoted is not in accordance with the respondent's theory of his cause of action as expressed in this court, nor that of the trial judge as evidenced by his remarks heretofore quoted; and it introduced an element of confusion and uncertainty into the case which might have been avoided. However, we are of opinion that the appellant suffered no prejudice thereby. The primary question before the jury was: Did the parties enter into the contract claimed by the respondent? This alleged contract was the foundation of his claim against the appellant. The latter admitted an agreement to exchange his interest in the Nebraska lands for the lands of respondent. The trial court very properly charged the jury that the decree of the Nebraska court was conclusive evidence that the so-called assignment of the land contracts by Saylor to Ross was of no effect, and transferred no interest in the lands to Ross. This being true, a cause of action in favor of Ross immediately accrued, and, as hereinbefore stated, the evidence of Saylor's bad faith in the transaction was so conclusive that no jury could possibly have found that issue in his favor. The statute (section 6054, Revised Codes, *supra*) gave the cause of action for the enlarged measure of damages; so that the court's instruction aforesaid, if the jury applied it in favor of the respondent, might afford an additional reason why Ross was entitled to relief, but could, in fact, add nothing to the measure of that relief. Defendant's liability was fixed and determined by other facts in the case, which the jury must have found against him; and although the instruction, in view of the respondent's avowed position, should not have been given, we are not inclined to reverse the cause for that reason, in the light of the fact that respondent's claim is so manifestly just,

and we see no possible way in which a different result could be reached on another trial. In this connection it must not be forgotten that we are not criticising the instruction as an abstract proposition of law. In a proper case it may be good law; but it was inapplicable to the court's and respondent's theory of this case.

It is contended by counsel for the appellant, but not with any great force—it is merely a suggestion in the brief—that the expenses incurred by the respondent were not "expenses properly incurred in preparing to enter upon the land." We think there is no merit in the suggestion. It is difficult to see how the respondent could avoid the payment of any of these amounts, and at the same time make a *bona fide* effort to enter upon the land, and keep faith with the appellant.

The jury returned a verdict for $500 "for necessary expenses in preparing to take possession of the land." The court in its instructions employed the words of the statute, viz., "expenses properly incurred." We see no substantial difference between the two expressions, and think the verdict was sufficient in that regard, in the absence of an objection thereto at the trial.

In conclusion we may say that, while indeed there are technical errors to be found in the record, we think they were not prejudicial to the appellant; and in so determining we are solaced by the thought that the jury reached the right conclusion, and that substantial justice was meted out to both parties.

It is conceded that the judgment is $76.45 in excess of the amount of the verdict. It is therefore ordered that the judgment be modified by the district court by deducting therefrom the sum of $76.45, as of the date of its rendition, and, as so modified, the judgment is affirmed. The order denying a new trial is also affirmed. Respondent shall recover his costs on appeal.

*Modified and affirmed.*

Mr. Chief Justice Brantly concurs in the affirmance.

Mr. Justice Holloway concurs.