DA 06-0561

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 301

KNUCKLEHEAD LAND COMPANY,
INC., a Montana corporation,

        Plaintiff and Appellant,

  v.

ACCUTITLE, INCORPORATED, a Montana corporation, d/b/a
AMERICAN TITLE AND ESCROW; and FLATHEAD COUNTY
TITLE COMPANY, a Montana corporation,

        Defendants, Third-Party Plaintiffs and Appellees,

  v.

SHAPIRO & MEINHOLD, L.L.P.,

        Third-Party Defendant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and For the County of Flathead, Cause No. DV-02-526C,
                     Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Harold V. Dye, Dye & Moe, P.L.L.P., Missoula, Montana

      For Appellees:

          Scott D. Hagel and Kimberly S. More, Crowley, Haughey,
          Hanson, Toole & Dietrich, P.L.L.P., Kalispell, Montana

                        Submitted on Briefs:  May 23, 2007

                              Decided:  November 20, 2007

Filed:

_____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant Knucklehead Land Company (Knucklehead) appeals the District Court's grant of summary judgment in favor of the Appellees, Accutitle, Inc. d/b/a American Title and Escrow (ATE) and Flathead County Title Company (FCTC).  We affirm.

¶2     We address the following issues:

¶3     Did the District Court err in granting summary judgment by:

    a.   Misconstruing the duties of a trustee under the Small Tract Financing Act of Montana?

    b.  Overlooking material issues of fact regarding commercial reasonableness of the Appellees' actions?

    c.  Failing to give Knucklehead the benefit of reasonable inferences from the record?

    d.  Concluding as a matter of law that Knucklehead sustained no recoverable damages for breach of contract?

    e.  Premising its ruling on Knucklehead's negligent misrepresentation claim on the wrong representation?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4     Knucklehead is a Montana corporation located in Flathead County.  ATE is the successor trustee for a trust indenture filed upon residential property in Kalispell, Montana, known as the "McCabe property," pursuant to the Small Tract Financing Act. The original purchasers defaulted and the lender, Citimortgage, Inc. d/b/a Citicorp

Mortgage, Inc., began the foreclosure process. Pursuant to an agreement between ATE and Citicorp, the law firm Shapiro & Meinhold L.L.P. (Shapiro) of Colorado Springs, Colorado, was designated to administer the non-judicial foreclosure sale of the McCabe property. Accordingly, Shapiro prepared the foreclosure sale documents and provided the required state and federal notices of foreclosure sale. Shapiro arranged for ATE to serve as substitute trustee, and ATE subsequently hired FCTC to act as its agent to cry the sale, which was scheduled for February 26, 2002.

¶5 On the morning of the sale, ATE received a fax from Shapiro stating that Shapiro believed the Internal Revenue Service (IRS) had not been properly notified of the sale. The IRS held a tax lien of approximately $60,000 on the property and Shapiro indicated that ATE should cancel the sale. ATE immediately tried to reach FCTC but, at that point, the sale was already in progress. Billy Christensen, President of Knucklehead, and Carl Haggar, Knucklehead's treasurer, attended the sale and, during the course of the sale, paid a competing bidder, Douglas Hatton, $2,500 to stop bidding on the property. As a result, Knucklehead submitted the high bid in the amount of $85,000 for the McCabe property, which appraised for $172,000. Following the sale, but prior to receiving any funds from Knucklehead, FCTC was advised by ATE of the perceived error in the notice of sale. Consequently, FCTC refused to accept payment from Knucklehead, informing Christensen that the sale had been voided. Knucklehead contacted Hatton, informed him of the cancelled sale, and Hatton agreed to destroy the $2,500 check given to him to withdraw from bidding. The sale was re-noticed and held again on July 18, 2002, at

which time the property sold for $122,000. Knucklehead was not the high bidder. It then filed this action in the District Court.

¶6      Knucklehead's complaint alleged that ATE and FCTC had committed (1) breach of trust, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) negligent misrepresentation. ATE and FCTC filed a third-party action against Shapiro for indemnity or contribution and Shapiro filed a counterclaim against ATE and FCTC for the same. Shapiro, ATE, and FCTC eventually settled their claims against each other, and Shapiro is not a party to this appeal. Following discovery, the parties all moved for summary judgment.

¶7      The District Court denied ATE and FCTC's motion for summary judgment but granted Knucklehead's motion for partial summary judgment, holding as a matter of law that a defect did not exist in the IRS notice as Shapiro had believed. Consequently, the court concluded that the first foreclosure sale was valid, a contract was formed at the time of sale, and that the failure to tender a deed transferring the property to Knucklehead resulted in a breach of contract. However, because Knucklehead failed to offer evidence of loss, the court reserved the question of whether Knucklehead had sustained any recoverable damages. Knucklehead has not appealed the District Court's legal conclusion that the notice to the IRS was proper, and thus, that holding stands unchallenged.

¶8      After further discovery and motions by the parties, the District Court entered summary judgment in favor of ATE and FCTC on all remaining counts. As to the breach of trust claim, the District Court held that ATE and FCTC's trustee duties were limited by

4

the Small Tract Financing Act of Montana, rejecting Knucklehead's reliance on the trust provisions of § 72-34-113, MCA. The parties had previously agreed that the "trustee at a forclosure [sic] sale has a duty to conduct the sale fairly, openly, reasonably, and with due diligence and sound discretion." The court ruled that Knucklehead failed to present any evidence that ATE "did anything to prevent the first sale from being conducted" in a manner consistent with this duty.

¶9 As to the breach of the implied covenant of good faith and fair dealing and the negligent misrepresentation claims, the court found that Knucklehead failed to establish disputed material facts and that ATE and FCTC were entitled to judgment as a matter of law. Regarding the previously established breach of contract, the District Court held that Knucklehead sustained no recoverable damages under § 27-1-314, MCA, and entered judgment in favor of ATE and FCTC. Knucklehead appeals.

## STANDARD OF REVIEW

¶10 We review a district court's grant of summary judgment de novo. *Precision Theatrical Effects, Inc. v. United Bank, N.A.*, 2006 MT 236, ¶ 20, 333 Mont. 505, ¶ 20, 143 P.3d 442, ¶ 20. We apply the same criteria as M. R. Civ. P. 56. Grant of summary judgment is proper when the moving party meets its burden and establishes both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Precision Theatrical Effects*, ¶ 20. The burden of proof then shifts to the non-moving party to prove beyond mere speculation and denial that a genuine issue of material fact exists. *Precision Theatrical Effects*, ¶ 20.

## DISCUSSION

¶11 **Did the District Court err in granting summary judgment by:**

> **a. Misconstruing the duties of a trustee under the Small Tract Financing Act of Montana?**

¶12 Knucklehead asserts that the District Court erred by granting summary judgment on the breach of trust claim because the District Court misinterpreted the duties of a trustee under the Small Tract Financing Act of Montana. Knucklehead argues that in the absence of a statutory definition, a word's acquired meaning in law is incorporated into the statute. Specifically, Knucklehead asserts that because the term "trustee" has a legally accepted meaning, the legislature intended to impose the "well-settled obligations and duties" of "other" trustees on trust indenture trustees. Knucklehead thus offers that the duties of a trustee set forth in § 72-34-101 et seq., MCA, are required of indenture trustees, including the duty to not delegate. *See* § 72-34-113, MCA. Knucklehead asserts that ATE and FCTC committed breach of trust by delegating trust administration to Shapiro, arguing that a trustee's "core function is one that 'the trustee can reasonably be required personally to perform,'" citing the *Restatement of Trusts 2d*, "yet . . . [ATE] abdicated this duty to Shapiro and allowed [Shapiro] to direct the voiding of the sale even though [ATE] had concluded that adequate notice had been given to the IRS." Knucklehead concludes that ATE "violated its duty to exercise general supervision" over Shapiro.

¶13 The Small Tract Financing Act of Montana (the Act) was originally introduced to reduce the strain on the financing of improvements upon small tracts, as explained in *First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54, 734 P.2d 1203 (1987). Prior to

6

passage of the Act, banks and investors were hesitant to invest in small tracts because when a loan financed by a standard mortgage went into default, funds were obstructed and possession of the property was prohibited for the statutory one-year period of redemption. *Chunkapura*, 226 Mont. at 57, 734 P.2d at 1205. The Act struck a compromise between investors and debtors whereby debtors gave up their rights to possession and redemption while lenders gave up their right to deficiency judgment upon default. *Chunkapura*, 226 Mont. at 57, 734 P.2d at 1205. The result was the trust indenture, whereby a trustee could avoid judicial proceedings and foreclose on property by advertisement and sale. Section 71-1-313, MCA. Under this option, the trustee is subjected to strict notice requirements before crying the sale, and the purchaser is entitled to possession of the property ten days after the sale. Sections 71-1-313, 315, 319, MCA. In sum, the Act streamlined and reduced obstacles to the foreclosure process.

¶14 Under the Act, the indenture trustee's duties are those related to properly conducting the foreclosure sale. The primary duties are delivery of notice to the affected parties, §§ 71-1-314, 315, MCA, and to "sell the property at public auction to the highest bidder." Section 71-1-315(3), MCA. The trustee is also charged with disposing of the proceeds of the sale and is thereafter "discharged from all further responsibility . . . ." Section 71-1-316, MCA. The statute imposes no other duties upon the indenture trustee.

¶15 Knucklehead's attempt to import the duties of other trustees could well defeat the purpose of the Act by complicating its streamlined process for foreclosure of simple mortgages. In accomplishing this purpose, the Act prevents abuse of process by providing built-in safeguards, including strict notice requirements and the borrower's pre-

7

sale right to cure, §§ 71-1-312, 313, MCA, which alleviate the need for imposition of additional trustee duties in order to fulfill the purposes of the Act. There is no indication that broader duties were contemplated for indenture trustees, and therefore we concur with the District Court's determination that Knucklehead's reliance on § 72-34-113, MCA, is misplaced.

¶16 Knucklehead has failed to raise material facts showing that ATE or FCTC breached the duties of an indenture trustee under the Act, and the District Court's dismissal of the breach of trust claim was proper.

¶17 **b. Overlooking material issues of fact regarding commercial reasonableness of the Appellees' actions?**

¶18 Knucklehead argues that the District Court improperly granted summary judgment on its claim for breach of the implied covenant of good faith and fair dealing. Section 28-1-211, MCA, defines the covenant of good faith and fair dealing as conduct that is honest in fact and observes "reasonable commercial standards of fair dealing in the trade." We recently discussed the covenant in *Phelps v. Frampton*, 2007 MT 263, ___ Mont. ___, ___ P.3d ___, explaining that "'every contract regardless of type, contains an implied covenant of good faith and fair dealing.'" *Phelps*, ¶ 29 (citing *Story v. City of Bozeman*, 242 Mont. 436, 450, 791 P.2d 767, 775 (1990)). The covenant is a "mutual promise implied in every contract that the parties will deal with each other in good faith and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Phelps*, ¶ 29 (internal quotations omitted). We stated that "'[i]n order . . . to recover . . . on a theory of breach of the implied covenant, there must be an enforceable contract to which the covenant attends.'" *Phelps*, ¶ 33

8

(ellipses in original) (quoting *Beaverhead Bar Supply v. Harrington*, 247 Mont, 117, 124, 805 P.2d 560, 564 (1991)). We also clarified that "a breach of the underlying contract is not a prerequisite to a breach of the implied covenant . . . ." *Phelps*, ¶ 35 (quoting *Farris v. Hutchinson*, 254 Mont. 334, 337, 838 P.2d 374, 375 (1992)).

¶19     The District Court determined that at the conclusion of the first sale, a valid contract was formed between the parties herein, and therefore, the implied covenant of good faith and fair dealing attached to that contract. Knucklehead claims that ATE and FCTC also breached the implied covenant, offering an argument that is two-fold. First, Knucklehead contends that a breach of the covenant occurred because ATE and FCTC failed to give proper notice of the sale to the IRS. However, as noted above, the District Court determined that, as a matter of law, the IRS notice was proper and Knucklehead has not appealed that decision. Thus, this issue has been settled and neither creates a genuine issue of material fact nor defeats the Appellees' entitlement to judgment as a matter of law.

¶20     Second, Knucklehead alleges the covenant was breached because ATE and FCTC violated reasonable commercial standards by ignoring an "essential checklist" that should have been used in conducting the foreclosure sale. Knucklehead does not allege that the covenant was violated in any other manner. Therefore, we review the record to determine if a genuine issue of material fact exists regarding whether ATE and FCTC violated reasonable commercial standards in the manner alleged by Knucklehead when conducting the sale.

9

¶21 Knucklehead presented the deposition testimony of an expert witness, Christopher Swartley (Swartley). In response, ATE and FCTC provided the expert testimony of Zane Sullivan, who opined that ATE and FCTC had followed commercially reasonable standards in conducting the sale. On appeal, Knucklehead argues that it was Swartley's opinion that ATE and FCTC did not follow commercially reasonable standards, thereby creating an issue of material fact. However, a review of the testimony reveals that Swartley's opinions were not as clearly defined as Knucklehead asserts. Swartley did not plainly state that ATE and FCTC had violated reasonable commercial standards. When questioned if he had "been asked to render any opinions that would be relevant to the statutory covenant of good faith and fair dealing," Swartley replied "no." As to the use of the "essential checklist," Swartley explained that using a checklist was his personal practice, but at no time did he state that use of such a checklist was a commercially reasonable standard for the administration of foreclosure sales. Accordingly, given this testimony, the District Court properly concluded that facts had not been offered which would demonstrate, for summary judgment purposes, that ATE and FCTC had violated accepted and reasonable commercial standards.

¶22 Absent evidence indicating that ATE and FCTC failed to act in accordance with industry practices, or had violated the implied covenant in another way, the District Court properly entered summary judgment in favor of ATE and FCTC on this issue.

¶23 **c. Failing to give Knucklehead the benefit of reasonable inferences from the record?**

¶24 Knucklehead contends that the District Court erred because it did not construe reasonable inferences in Knucklehead's favor. Summary judgment is appropriate if, after

the moving party has met its burden of proof, the non-moving party cannot prove that a material issue of fact exists and the moving party is entitled to judgment as a matter of law. *Precision Theatrical Effects*, ¶ 20. Proof by the non-moving party must be greater than mere denial and speculation, *Precision Theatrical Effects*, ¶ 20, but "all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party who opposed summary judgment." *Heiat v. Eastern Montana College*, 275 Mont. 322, 327, 912 P.2d 787, 791 (1996). However, a "party cannot create a disputed issue of material fact by putting his own interpretations and conclusions on an otherwise clear set of facts." *Koepplin v. Zortman Mining*, 267 Mont. 53, 61, 881 P.2d 1306, 1311 (1994).

¶25 Knucklehead's briefing lists ten inferences it believes the District Court should have drawn in its favor. However, the majority of Knucklehead's inferences require reliance upon a conclusion that the notice of sale provided to the IRS was inadequate. The District Court determined as a matter of law that the IRS notice was not inadequate, but proper, and absent an appeal of that issue, we do not question the District Court's holding. Thus, any inferences dependent upon the assumption that the notice was inadequate must fail. The remaining inferences are either allegations requiring other factual assumptions or are conclusory statements. For instance, Knucklehead asks the Court to infer that "[ATE] could have learned of Shapiro's negligent and inadequate procedures but made no effort to do so" and to infer that "[t]he representations in the Trustee's Affidavit were false and [ATE] made them not knowing or caring whether they were true or false." Inferring what ATE could have learned about allegedly negligent procedures had it made an effort or whether it was uncaring about the veracity of its

11

representations, without more, requires a speculative leap that is inappropriate for summary judgment purposes. Lastly, several of the asserted inferences relate to Shapiro's conduct and Knucklehead fails to establish how these apply to the claims in this case.

¶26 Summary judgment cannot be defeated by unsupported speculation. Consequently, the District Court did not err by failing to give Knucklehead the benefit of the inferences it claims.

¶27 **d. Concluding as a matter of law that Knucklehead sustained no recoverable damages for breach of contract?**

¶28 Knucklehead argues that the District Court erred in granting summary judgment regarding its failure to sustain damages for breach of contract by applying the incorrect standards for determining recoverable damages. Damages for breach of an agreement to convey real property are governed by § 27-1-314, MCA, which provides:

> The detriment caused by the breach of an agreement to convey an estate in real property is considered to be the price paid and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon. If the breach was in bad faith and the agreed price was less than the value of the estate, the detriment is also considered to include the difference between the agreed price and the value of the estate at the time of the breach and the expenses properly incurred in preparing to enter upon the land.

¶29 In sum, because no purchase price was paid which could be recovered in this case, the statute limits recoverable damages to the expenses incurred in examining title and preparing the necessary papers for sale. Only when there is the additional showing of bad faith does the statute authorize the non-breaching party to recover the difference between

the agreed price and the property value at the time of breach, when the agreed price is lower than the value, as here. Section 27-1-314, MCA.

¶30 In *Stovall v. Watt*, 187 Mont. 439, 610 P.2d 164 (1980), we held that an award of damages equal to the property value less the price paid was appropriate because the seller had acted in bad faith. There, Watt leased property to the Stovalls, including an option to buy. *Stovall*, 187 Mont. at 442, 610 P.2d at 166. At the time the Stovall lease was entered, Watt believed the current lessees, the Hardys, were in default on their lease with Watt. *Stovall*, 187 Mont. at 441, 610 P.2d at 166. However, the Hardys were not in default and therefore had a competing lease which also contained an option to purchase the property. *Stovall*, 187 Mont. at 441, 610 P.2d at 166. Watt then solicited offers from both the Hardys and the Stovalls, and the Hardys responded with an offer. *Stovall*, 187 Mont. at 446, 610 P.2d at 168-69. The Stovalls repeatedly asked Watt for the bid they would need to meet in order to purchase the land. *Stovall*, 187 Mont. at 446, 610 P.2d at 169. Both Watt and her attorney avoided Stovalls' request, failing to return their telephone calls and failing to inform them of Hardy's bid. *Stovall*, 187 Mont. at 447, 610 P.2d at 169. Watt then sold the property to the Hardys. *Stovall*, 187 Mont. at 447, 610 P.2d at 169. The district court held that the intentional nature of Watt's actions in avoiding the Stovalls constituted bad faith. *Stovall*, 187 Mont. at 440, 610 P.2d at 165. We agreed and affirmed the district court's grant of damages pursuant to § 27-1-314, MCA, in the amount equal to the value of the property minus the contract price. *Stovall*, 187 Mont. at 446, 447-48, 610 P.2d at 168, 169-70.

13

¶31 Here, Knucklehead neither paid a purchase price nor incurred expenses[1] in its attempt to obtain the McCabe property, because ATE and FCTC did not accept Knucklehead's proffered payment. Therefore, Knucklehead incurred no recoverable damages under the statute unless ATE and FCTC acted in bad faith. However, we agree with the District Court that Knucklehead failed to produce facts indicating that ATE and FCTC acted in bad faith. At most, Knucklehead offered evidence that the Appellees may have been negligent in their actions. However, negligence without more does not necessarily equate to bad faith. As the District Court stated, "no party now moving for summary judgment on the issue of damages knew that the sale would be voided until after it was conducted . . . [and the] sequence of events [here] is a far cry from the intentional acts set forth in [*Stovall*]." *See also Ross v. Saylor*, 39 Mont. 559, 104 P. 864 (1909) (holding that false representations made to induce the buyer to enter an agreement to purchase land constituted bad faith). Because Knucklehead failed to produce evidence in support of its claim that ATE and FCTC acted in bad faith, Knucklehead's damages were limited by the statute to its actual expenses, and none were demonstrated. Accordingly, the District Court correctly applied § 27-1-314, MCA, and properly granted summary judgment.

¶32 **e. Premising its ruling on Knucklehead's negligent misrepresentation claim on the wrong representation?**

¶33 Knucklehead's last argument is that the District Court erred in dismissing its negligent misrepresentation claim. Knucklehead states that the court "erroneously

---

[1]The $2,500 check which Knucklehead issued to Hatton to withdraw from bidding during the first sale was destroyed by Hatton at Knucklehead's request.

premised" the issue as a misrepresentation that the "land was going to be sold on that day in February to the highest bidder." Rather, Knucklehead asserts that "the representation at issue was the representation that adequate notice was given to the IRS" and that this representation "was manifestly false when made because, as a matter of firm practice, Shapiro never gave adequate notice."

¶34 As explained above, however, the District Court concluded that as a matter of law the notice to the IRS was adequate. Therefore, even if the District Court erroneously characterized the representation underlying Knucklehead's negligent misrepresentation claim, Knucklehead cannot demonstrate error on appeal by relying on a notice issue which was decided to the contrary by the District Court and is not further challenged.

¶35 Affirmed.


/S/ JIM RICE


We concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER