DA 13-0235

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 346

LINDA McVEY a/k/a LINDA PIERCE,

      Petitioner and Appellant,

  v.

USAA CASUALTY INSURANCE COMPANY,

      Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixth Judicial District,<br>In and For the County of Park, Cause No. DV 10-164<br>Honorable Brenda Gilbert, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Walter "Lefty" Madden, Attorney at Law; Livingston, Montana

          Mark J. Hartwig, Attorney at Law; Livingston, Montana

      For Appellee:

          David McLean, Christy S. McCann, Browning, Kaleczyc, Berry & Hoven,
P.C.; Missoula, Montana

                               Submitted on Briefs: October 2, 2013
                                        Decided: November 14, 2013

Filed:

                       _____
                               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Appellant Linda McVey, a/k/a Linda Pierce (McVey), appeals the decision of the Sixth Judicial District Court, Park County, that entered summary judgment in favor of Appellee USAA Casualty Insurance Company (USAA). We reverse and remand.

¶2    We address the following issues on appeal:

¶3    *Whether McVey was qualified to bring a claim pursuant to §§ 33-18-201(4) and -242, MCA.*

¶4    *Whether the District Court properly granted summary judgment in favor of USAA regarding McVey's claim for damages arising from emotional distress.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    McVey was involved in a car accident with Kent Blough (Blough) on July 26, 2007. She was crossing a two-lane bridge over the Yellowstone River south of Livingston, Montana. Blough approached in the opposite direction while pulling a swather behind his pickup. The swather was wider than the lane of travel. McVey collided with the swather's left side in her lane of travel.

¶6    Montana Highway Patrol Trooper Jason Hoppert (Hoppert) filed a crash investigator's report. Hoppert determined that the vehicles had collided in McVey's lane of travel. McVey suffered severe injuries as a result of the accident, including seven broken ribs, a fractured right wrist, and a fractured left heel. McVey endured surgeries to repair her wrist and heel and underwent extensive post-surgical rehabilitation. Blough reported the accident to McVey's insurer, USAA, the day after the accident.

2

¶7    USAA assigned claims adjuster Danny Theda (Theda) to handle the claim. Theda took a statement from Blough. Blough claimed that he had stopped before crossing the bridge due to his concerns regarding the width of the swather. Theda spoke with McVey on August 1, 2007, but she could not remember the details of the accident. Theda never interviewed Hoppert about his crash investigation. Theda interviewed no firefighters and ambulance service personnel who responded to the scene of the accident.

¶8    USAA received Hoppert's crash investigation report on September 5, 2007. Despite this information, Theda still concluded that McVey was the majority at fault for the accident. USAA paid Blough's property damages. At the time, McVey's USAA policy had coverage that included: property damage, medical payments, and UM/UIM coverage. USAA made auto collision and medical payments to McVey under the policy. USAA refused to honor McVey's $300,000 UM/UIM coverage once Theda determined that McVey was the majority at fault.

¶9    McVey filed suit against Blough in 2009. USAA unsuccessfully tried to intervene in the lawsuit, apparently to prevent McVey from prevailing. Blough's insurer paid McVey the limit of Blough's insurance policy. Despite repeated requests, USAA refused to pay McVey any sums available under her UM/UIM coverage of $300,000.

¶10    USAA's own expert eventually reviewed accident reconstruction reports prepared by an expert for McVey and an expert for Blough. USAA's expert determined that Blough, whom USAA had already paid under McVey's policy, had been the majority at fault. USAA immediately tendered to McVey its $300,000 UM/UIM policy limit.

3

¶11 McVey filed a complaint against USAA stating six claims. She asserted that USAA had breached the insurance contract and had violated sections of the Montana Unfair Trade Practices Act (UTPA), specifically §§ 33-18-201 and -242, MCA. McVey also asserted fraud and common law bad faith claims and sought punitive damages. The District Court dismissed McVey's breach of contract claim on McVey's request. The District Court later dismissed McVey's claims for fraud and common law bad faith.

¶12 McVey retained claims for violation of the UTPA and for punitive damages. McVey filed a motion for summary judgment on the basis that USAA's investigation had not been reasonable as a matter of law, pursuant to § 33-18-201(4), MCA. The District Court denied McVey's motion.

¶13 USAA filed two separate motions for partial summary judgment. The first motion contended that McVey had not been a "claimant" as required by the UTPA. The second motion sought dismissal of McVey's claims for damages arising from her alleged emotional distress and increased insurance premiums. The District Court granted both motions filed by USAA.

¶14 The District Court's grant of USAA's motions for partial summary judgment resolved all remaining claims. The District Court entered judgment. McVey appeals.

## STANDARD OF REVIEW

¶15 We review de novo a district court's ruling on a motion for summary judgment. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149.

4

## DISCUSSION

¶16    *Whether McVey was qualified to bring a claim pursuant to §§ 33-18-201(4) and -242, MCA.*

¶17    Section 33-18-201(4), MCA, prohibits an insurer from "refus[ing] to pay claims without conducting a reasonable investigation based upon all available information." Section 33-18-242, MCA, provides that "[a]n insured or a third-party claimant has an independent cause of action against an insurer for actual damages" that arise from an insurer's violation of § 33-18-201(4), MCA.

¶18    McVey claims that USAA's failure to investigate reasonably her UM/UIM claim violated § 33-18-201(4), MCA. USAA responds, and the District Court agreed, that § 33-18-201(4), MCA, does not apply in this situation because McVey did not qualify as a "claimant" at the time that Blough had filed the claim in question. USAA argues in the alternative that even if McVey had been a "claimant," USAA never refused to pay McVey's claim as it eventually paid $300,000 for her UM/UIM coverage.

¶19    Both parties focus heavily on whether McVey had been a "claimant" for purposes of § 33-18-201(4). MCA. The District Court determined that only a "claimant" could invoke § 33-18-201(4), MCA, based on our decision in *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 86, 345 Mont. 12, 192 P.3d 186. We stated in *Lorang* that "the UTPA is designed to protect *claimants* against insurers who would deny a claim without first conducting a reasonable investigation." *Lorang*, ¶ 86 (emphasis added).

5

¶20 Nowhere in §§ 33-18-201(4) or -242, MCA, however, does the language limit to "claimants" those persons protected under the statutes. Section 33-18-201(4), MCA, addresses when an insurer refuses to pay a claim. Nothing in § 33-18-201(4), MCA, indicates who has to file the claim for the statute to apply. Section 33-18-242, MCA, refers to the "insured" or a "third-party claimant" as possessing an independent cause of action for an insurer's violation of the UTPA. In fact, the "claimant" to whom the Court referred in *Lorang*, ¶ 86, was an "insured" who filed a claim against her health insurance provider. *Lorang*, ¶ 1. The reference in *Lorang* to a "claimant" did not intend to control the scope of the protections provided by §§ 33-18-201(4) and -242, MCA, or otherwise bar an "insured," such as McVey, from pursuing a claim pursuant to §§ 33-18-201(4) or -242, MCA.

¶21 Blough filed a claim with USAA on July 27, 2007, the day after the accident. A claim for purposes of § 33-18-201(4), MCA, had been filed as of July 27, 2007. The provisions of § 33-18-201(4), MCA, applied to USAA's actions in adjusting the claim from that day forward. The fact that Blough, rather than McVey, had filed the claim on July 27, 2007, does not preclude McVey, the insured, from invoking the protections of §§ 33-18-201(4) and -242, MCA.

¶22 USAA separately maintains that it did not refuse to pay, or unreasonably delay in paying, McVey's UIM claim. USAA points to the fact that it eventually paid $300,000 to McVey under her policy's UM/UIM coverage. McVey argues that USAA's determination on September 12, 2007, that McVey had been the majority at fault for the accident

6

constituted a de facto denial of McVey's UM/UIM coverage. McVey directs us to a report by David E. Bauer (Bauer), an expert witness for USAA.

¶23 Bauer noted that McVey "was not eligible to recover under the UIM coverage of her auto policy" due to USAA's liability evaluation on September 12, 2007, "that Linda McVey was more than 50% at fault for the accident." Bauer reiterated that McVey "was not 'legally entitled to recover'" due to the terms of her policy. We agree with McVey that USAA's determination that McVey had been the majority at fault excluded her from eligibility to recover under the UIM coverage portion of her policy. USAA's determination on September 12, 2007, that she had been the majority at fault rose to the level of a denial of her UM/UIM coverage under the policy.

¶24 USAA eventually paid McVey the sums available under her UM/UIM coverage, but it waited more than three years after the accident—until September 2010—to pay its policy limits. A later payment fails to cure an insurer's prior failure to conduct a reasonable investigation, as required by § 33-18-201(4), MCA. *See Lorang*, ¶ 149. The Court discussed in *Lorang* the unintended consequences that would flow from a decision to allow insurers to "cure" an unreasonable investigation by subsequently paying the claim after having denied it. *Lorang*, ¶ 149. The Court recognized that insurers simply could "ignore the UTPA and forego reasonable investigation, or any investigation, until the claimant [took] steps to enforce his or her contractual rights." *Lorang*, ¶ 149. If the law allowed this "cure," insurers would "remain immune from liability under § 33-18-201 (4), MCA." *Lorang*, ¶ 149. To

7

allow insurers to "cure" effectively would render this section of the code meaningless. *Lorang*, ¶ 149.

¶25 USAA's eventual payment to McVey of the policy limit under her UM/UIM coverage does not shield USAA from potential liability under § 33-18-201(4), MCA. USAA effectively denied McVey's UM/UIM claim on September 12, 2007, when it determined McVey to be the majority at fault. USAA's eventual payment of the claim proves insufficient to preclude application of § 33-18-201(4), MCA. *Lorang*, ¶ 149.

¶26 Whether USAA actually conducted a reasonable investigation as required by § 33-18-201(4), MCA, remains an issue for the trier of fact. We reverse the District Court's determination that McVey may not pursue a claim based upon USAA's alleged failure to investigate reasonably her claim as required under § 33-18-201(4), MCA.

¶27 *Whether the District Court properly granted summary judgment in favor of USAA regarding McVey's claim for damages arising from emotional distress.*

¶28 The District Court determined that McVey had failed to present any evidence that she suffers from emotional distress as a result of USAA's alleged mishandling of her claim. A court may grant summary judgment if "discovery and disclosure materials on file" indicate that no genuine issue of material fact exists, and that the party moving for summary judgment is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). McVey claims emotional distress as an element of damages that resulted from USAA's alleged violation of the UTPA. A party who raises a parasitic emotional distress claim does not have to demonstrate the heightened standard of proof required for an independent, stand-alone claim

8

of negligent or intentional infliction of emotional distress. *Lorang*, ¶ 190; *Jacobsen v. Allstate Ins. Co.,* 2009 MT 248, ¶ 66, 351 Mont. 464, 215 P.3d 649.

¶29 We clarified in *Jacobsen* that no heightened standard exists for parasitic emotional distress claims, "and that the severity of the distress affects the amount of damages recovered but not the underlying entitlement to recover." *White v. Longley*, 2010 MT 254, ¶ 48, 358 Mont. 268, 244 P.3d 753 (citing *Jacobsen*, ¶ 66). *Jacobsen* also cited the damage instructions in the Montana Pattern Jury Instructions 2d 25.02, 15.01-03, for guidance in evaluating a parasitic claim for emotional distress damage. *Jacobsen*, ¶ 66. The instructions provide that there exists no "definite standard by which to calculate compensation for mental and emotional suffering and distress." Mont. Pattern Jury Instr. Civ. 25.02 (2d ed. 2003); *Jacobsen*, ¶ 65. Therefore, a party who pursues a parasitic claim for emotional distress avoids the heightened evidentiary showing of a stand-alone emotional distress claim. *Jacobsen*, ¶ 66; *Lorang*, ¶ 190.

¶30 McVey's parasitic emotional distress claim arises from her UTPA claims. McVey's deposition testimony provides sufficient evidence of emotional distress to establish that genuine issues of material fact exist. McVey described USAA as a "bunch of crooks" who caused her to have suffered emotional distress damages as a result of how USAA treated her. McVey further testified that "I am suffering mental distress," but declined to describe it. She only said that she "[did not] need counseling for something that [she] know[s] is not [her] fault."

9

¶31 We allowed a claim of emotional distress by the insureds in *Lorang* to proceed to trial premised on the fact that they were "shocked and sickened at the prospect of having to battle with [their insurer] again to recover replacement socket benefits." *Lorang*, ¶ 193. We subsequently determined in *White* that the plaintiffs had presented sufficient evidence to support an award of emotional distress damages on their claims of negligence and constructive fraud when they testified to the "stress, anxiety and depression" that they had suffered from dealing with a "house-building fiasco." *White*, ¶ 49. We noted that the plaintiffs had to live apart when the husband "had to abandon retirement and return to California to work again." *White*, ¶ 49. This evidence substantiated the District Court's determination that "the Whites suffered greatly as they watched their dream turn into a nightmare." *White*, ¶ 49. McVey can pursue her emotional distress claim if she can present evidence at trial of a similar nature.

¶32 A jury ultimately decides facts in a case and the inferences to be drawn from such facts. Sections 26-1-501, -502, MCA. A court should not rely upon an inference for summary judgment purposes if it "requires a speculative leap[.]" *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 25, 340 Mont. 62, 172 P.3d 116. Additionally, unsupported allegations generally prove insufficient for a plaintiff to withstand summary judgment. *Glacier Tennis Club at the Summit, LLC v. Treweek Constr. Co.*, 2004 MT 70, ¶ 37, 320 Mont. 351, 87 P.3d 431, *overruled in part on other grounds*, *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 21, 336 Mont. 105, 152 P.3d 727.

¶33    McVey admittedly failed to support her statement in her deposition that she suffered mental distress by any additional explanation. We need not make a "speculative leap," however, if we infer from all of the evidence in the summary judgment record that McVey would experience stress and anxiety during the three-year interval between the accident and USAA's decision finally to pay her the benefits of her UM/UIM coverage. McVey suffered substantial physical injuries that required multiple surgeries. She nevertheless persisted in her efforts to secure coverage under her UM/UIM policy. Among other matters, she retained an accident reconstruction expert to overcome USAA's attempt to intervene against her in her suit against Blough. A jury should be allowed to hear McVey's emotional distress claim and observe her demeanor on the stand. A jury can decide if McVey suffered from emotional distress as a result of her treatment by USAA when it allegedly violated the UTPA. McVey has met the evidentiary standard required in *Jacobsen* to defeat USAA's motion for summary judgment. *See Jacobsen*, ¶ 66.

¶34    Reversed and remanded for further proceedings in accordance with this opinion.


                                                /S/ BRIAN MORRIS
We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER


Justice Laurie McKinnon, dissenting.

11

¶35    I respectfully dissent from the Court's holding that an insured has standing to enforce the UTPA based solely on the filing of a claim by a third-party claimant. This holding is contrary to basic principles of standing and justiciability. I further dissent from the Court's holding that USAA is not entitled to summary judgment on McVey's UTPA cause of action. This holding is based on a mistaken understanding of the timing of McVey's UIM claim.

¶36    Following is a timeline of the pertinent events in this case:

July 26, 2007 McVey and Blough are involved in an automobile accident.

July 27, 2007 Blough files a property claim with USAA.

July to Sept. 2007   USAA claims adjuster Theda conducts an investigation, including an interview with Blough on August 1, two interviews with McVey on separate days in August, a review of the police report, and an inspection by an independent adjuster.

Sept. 12, 2007     Theda concludes that McVey is "majority at fault." USAA pays Blough's property claim.

Sept. 14, 2007     McVey's attorney notifies USAA that she will sue Blough for damages.

Feb. 18, 2008 USAA receives the report of Blough's reconstruction expert, which indicates that McVey was at fault.

Jan. 20, 2009 McVey files suit against Blough.

Feb. 10, 2009 McVey's attorney advises USAA that she will be submitting a UIM claim with USAA.

May 26, 2010     McVey provides USAA with a second reconstruction expert's report, which states that Blough was at fault. McVey informs USAA that she settled the litigation with Blough for the policy limits, and she demands payment of her UIM claim. USAA thereafter hires a third expert to evaluate the accident reports.

Sept. 23, 2010        USAA pays McVey the UIM policy limits.

¶37    The Court holds that Blough's act of filing a third-party claim with USAA gave McVey (the insured) standing to enforce the UTPA. Opinion, ¶¶ 20-21. But at that time, McVey did not have a pending claim with USAA that required a liability determination or investigation. The only pending claim that triggered USAA's investigation of the accident was Blough's claim for property damage, and Blough thus was the only party who could claim any sort of injury if USAA conducted an inadequate investigation. The Court's conclusion that McVey could file an action under the UTPA premised on USAA's handling of Blough's claim lacks any basis in law. To maintain an action, McVey must demonstrate *her own* injury under the UTPA.

¶38    Under §§ 33-18-201(4) and -242(1), MCA, an insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's refusal to pay claims without conducting a reasonable investigation. However, it is an elemental principle of justiciability that a plaintiff cannot maintain an action unless she clearly alleges a past, present, or threatened injury to a property or civil right which would be alleviated by successfully maintaining the action. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 33, 360 Mont. 207, 255 P.3d 80. Furthermore, "as a prudential matter," a plaintiff is generally restricted to asserting her own rights and not those of third parties. *Williamson v. Mont. Pub. Serv. Commn.*, 2012 MT 32, ¶¶ 28, 42, 364 Mont. 128, 272 P.3d 71.

¶39    McVey's UIM claim was premised on the assertion that Blough's motor vehicle had been underinsured. She presented this claim to USAA, at the earliest, in February 2009. At

13

that time, her lawsuit against Blough was in its infancy. McVey did not demand payment from USAA under her UIM coverage until May 2010, after settlement of her lawsuit against Blough. I agree with the Court that if USAA had then denied coverage to McVey based solely on its initial, allegedly inadequate investigation of Blough's claim three years earlier (in the summer of 2007), then McVey would have suffered the requisite "injury" to establish standing for a lawsuit under the UTPA. *See* Opinion, ¶¶ 22-23. But that would only be because McVey had, by that point, filed *her own* claim necessitating an investigation of the accident. The filing of a "claim" is a prerequisite to the pursuit of a UTPA action *by that claimant* premised on a violation of § 33-18-201(4), MCA. An insured cannot claim injury based solely on how the insurer investigates a claim made by a third party. I accordingly disagree with the Court's conclusion at ¶ 21 that Blough's filing of a property claim, by itself, gave McVey grounds to invoke the protections of §§ 33-18-201(4) and -242, MCA.

¶40    Turning now to the specifics of McVey's UTPA action, the facts do not support the Court's assertion that USAA denied McVey's UIM claim based on Theda's earlier determination in September 2007 that McVey had been majority at fault. Opinion, ¶ 23. McVey's UIM coverage provided for the payment of damages that she was legally entitled to recover from the owner or operator of an underinsured motor vehicle. The purpose of UIM coverage "is to provide a source of indemnification when the tortfeasor does not provide adequate indemnification." *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 21, 315 Mont. 107, 67 P.3d 892. Although McVey filed her UIM claim with USAA in February 2009, she was not eligible for such coverage until it was determined that Blough was at fault

14

*and* that his insurance coverage was insufficient to compensate McVey for her damages. That was the purpose of McVey's lawsuit against Blough. From January 2009 to May 2010, she was involved in litigation against Blough to establish which party was at fault. In May 2010, McVey settled her case against Blough for his policy limits and notified USAA of the settlement. At that time, McVey provided USAA with the report of her accident reconstruction expert and asserted her eligibility for UIM coverage. Once USAA received the report of McVey's expert, USAA investigated and concluded that Blough was at fault. USAA then paid the policy limits of McVey's UIM coverage in September 2010.

¶41 McVey has not asserted that USAA neglected to effectuate a prompt, fair, and equitable settlement of her UIM claim. *See* § 33-18-201(6), MCA. Rather, she has asserted specifically that USAA refused to pay her claim without conducting a reasonable investigation based on all available information. *See* § 33-18-201(4), MCA. Yet, USAA never refused to pay her claim. Quite the contrary, once McVey settled her lawsuit against Blough and demanded payment under her UIM coverage, USAA conducted an investigation in light of the expert report that McVey had only recently provided, and USAA then paid McVey's UIM claim. The Court's suggestion that USAA "waited more than three years" to pay McVey's claim, Opinion, ¶ 24, is simply an incorrect recitation of the facts. (Not only that, it is irrelevant given that McVey has not asserted a claim under § 33-18-201(6), MCA.) McVey did not even present her UIM claim until February 2009, and her eligibility for UIM coverage did not arise until she settled the Blough lawsuit in May 2010.

15

¶42 Based on the undisputed facts, USAA is entitled to summary judgment on McVey's UTPA claim. I would affirm the District Court. I dissent from this Court's contrary decision.

/S/ LAURIE McKINNON