No. 01-278

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 298

CENTECH CORPORATION,

Petitioner and Appellant,

v.

HEIDI SPROW,

Respondent and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

James M. Kommers, Kommers, Steele & Bentson, Bozeman,

Montana

For Respondent:

Geoffrey Angel, Angel Law Firm, Bozeman, Montana

Submitted on Briefs: September 20, 2001
Decided: December 28, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 CenTech Corporation (CenTech) appeals from the Eighteenth Judicial District Court's order upholding the Human Rights Commission's decision to dismiss CenTech's appeal. We reverse.

¶2 The following issue is raised on appeal:

¶3 Did the District Court err in holding that the Human Rights Commission properly dismissed CenTech's appeal?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Heidi Sprow (Sprow) filed a complaint with the Department of Labor and Industry (the Department) alleging that CenTech discriminated against her on the basis of gender. A contested case hearing was held, and the Department issued its final agency decision in Sprow's favor. CenTech filed a timely notice of appeal with the Human Rights Commission (HRC).

¶5 Pursuant to the HRC's scheduling order, CenTech's appeal brief was due May 15, 2000. The HRC accepts facsimile filings, and, on this date, CenTech alleges that it attempted to fax its appeal brief to the HRC at 4:53 and 4:55 p.m. CenTech asserts that due to communication errors with the Department's fax machine, the HRC received only one page of the fax transmission. According to her affidavit, CenTech's counsel's paralegal, Nicole Locati (Locati), called the HRC to advise it of the communication errors, but no one answered the telephone and the answering machine was in service. Locati thus mailed the brief to the HRC on May 15, 2000, and the HRC received it on May 17, 2000-two days past the deadline. CenTech claims that the next morning, it twice again attempted to fax the brief to the HRC, but these attempts were also unsuccessful. Also on May 16,

2001, Locati stated that she telephoned the HRC regarding the failed attempts to fax the appeal brief. In addition, she sent a letter to the HRC advising it of the situation and her conversation with an HRC representative who indicated that the communication error was likely due to the long distance connection.

¶6 On May 19, 2000, the HRC deemed CenTech's brief as untimely and declined to consider it. The HRC made the following findings:

> On May 15, 2000, the Commission did not receive Respondent's brief. Respondent did not telephone the Commission, and Respondent's attempt to send a facsimile copy was limited to one attempt at 4:53 p.m. to transmit one page. That page was not received. The Commission received numerous other faxes on May 15, 2000. The fax machine was working properly. On May 16, 2000, the Commission did not receive Respondent's brief. Again, it appears that two attempts to fax a single sheet of paper were made at 8:40 a.m. and at 9:03 a.m. on that date. The Commission did not receive a telephone call from Respondent. The Commission's fax machine received faxes without any complaints of malfunction throughout that day. On May 17, 2000, Respondent's brief, postmarked May 15, 2000, was received by the Commission.

¶7 The HRC upheld its decision to dismiss CenTech's appeal in response to CenTech's motion for reconsideration. It faulted CenTech for failing to continue to fax the brief until midnight on May 15, 2000, and it maintained that "[t]he Commission is not responsible for telecommunication malfunctions." CenTech then filed a petition for judicial review in the Eighteenth Judicial District Court.

¶8 In its decision, the District Court relied upon the HRC's findings that it received numerous other faxes on May 15, 2000, and that the fax machine was working properly. The court concluded that CenTech, by waiting until "almost literally the last minute" to file its brief, "assumed the risk associated with late filing and today's technology. [CenTech] is not immune from the consequences associated with that risk." The District Court upheld the HRC's decision to dismiss CenTech's appeal. At this time, CenTech appeals the District Court's decision to this Court.

## DISCUSSION

¶9 Did the District Court err in holding that the Human Rights Commission properly

dismissed CenTech's appeal?

¶10 We review findings of fact in administrative cases to determine whether the findings are clearly erroneous. We review conclusions of law to determine whether they are correct. *Small v. Board of Trustees*, 2001 MT 181, ¶ 7, 306 Mont. 199, ¶ 7, 31 P.3d 358, ¶ 7.

¶11 CenTech contends that the District Court erred in upholding the HRC's decision to dismiss its appeal due to the untimely filing of its appeal brief. It insists that the District Court limited the factual basis for its decision to whether the HRC's fax machined worked properly, and that the court failed to consider the following clearly erroneous findings of the HRC: (1) CenTech did not attempt to call the HRC; (2) CenTech's attempt to fax its brief was limited to one attempt to transmit a single piece of paper on May 15, 2000 and two attempts on May 16, 2000; and (3) the HRC received faxes without complaint of malfunction throughout May 16, 2000. CenTech insists that the HRC and District Court decisions are fundamentally unfair and place technical form over substance. It argues that the circum-stances presented in this case are the reason that the HRC's regulations grant it discretion to modify, waive or excuse application of the administrative rules to prevent injustice.

¶12 In response, Sprow argues that CenTech failed to file its appeal brief by the HRC's deadline and, as a result, the District Court properly found that the HRC did not err when dismissing CenTech's appeal. She insists that the evidence shows that the HRC never received any fax transmission from CenTech on May 15, 2000. She asserts that the HRC received several other faxes on this date, and she discounts the importance of the HRC's finding that CenTech failed to call the HRC regarding the communication errors.

¶13 A party filing an appeal to the HRC may file a facsimile of a document of no more than twenty pages as long as it is an exact duplicate of the original and only if the facsimile copy is followed within five days by filing of the original or an original copy. Rule 24.9.1703(6), ARM. Filing with the HRC is effective upon actual receipt at the offices of the Department and not upon mailing. Rule 24.9.1703(3), ARM. The HRC may suspend, waive or modify its rules for good cause to expedite decision, prevent manifest prejudice to a party, assure a fair hearing, or afford substantial justice. Rule 24.9.1701(3), ARM.

¶14 The District Court appropriately reviewed the HRC's decision to dismiss CenTech's

appeal pursuant to § 2-4-704, MCA. This provision states that the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Section 2-4-704(2), MCA. It may affirm the agency, remand for further proceedings, or reverse the agency's decision if substantial rights of the appellant have been prejudiced because the agency's findings, inferences, conclusions or decisions are, in relevant part, made upon unlawful procedure, clearly erroneous, arbitrary or capricious or characterized by abuse of discretion. Section 2-4-704(2)(iii), (v), (vi), MCA. Here, the District Court held that the HRC's decision to dismiss CenTech's appeal was made upon lawful procedure and was not clearly erroneous, arbitrary, capricious or characterized by an abuse of discretion.

¶15 We disagree. At the outset, we conclude that several of the findings in the HRC's May 19, 2000, Order Regarding Timeliness of Brief were clearly erroneous. First, the HRC mistakenly found that CenTech did not attempt to call the HRC regarding the technical problems. CenTech's counsel's telephone records and Locati's affidavit demonstrate that CenTech attempted to telephone the HRC on May 15, 2000, at approximately 4:50 p.m. However, the HRC's answering machine was in service and no representative of the HRC was available. Furthermore, the evidence shows that CenTech telephoned the HRC on May 16, 2000, to inform it of the problems with the fax transmission.

¶16 Second, we conclude that the HRC erred in finding that CenTech limited its fax attempt to only one sheet of paper at 4:53 p.m. on May 15, 2000. The HRC's own facsimile journal reflects that CenTech attempted to fax its brief two times on this date and two more times on May 16, 2000. Furthermore, at the District Court hearing, Locati testified that she attempted to fax the entire brief-not just a single piece of paper.

¶17 Third, the HRC did not receive faxes without complaint of malfunction throughout May 16, 2000. Rather, Locati informed the HRC about the problems with the fax machine on this date by both telephone and letter.

¶18 Finally, regarding the District Court's reliance on the HRC's finding that its fax machine worked properly on May 15, 2000, the Department's own facsimile journal, CenTech's counsel's facsimile report as well as CenTech's telephone record indicate that there was a communication error during the transmission of CenTech's brief on May 15, 2000, and May 16, 2000. Moreover, Locati stated in her affidavit and at the hearing regarding this issue that her office's fax worked properly on May 15, 2000. In addition, she stated in her affidavit that an HRC representative indicated that the communication errors

were likely due to the long distance connection. In light of this evidence, we conclude that there was, at the least, a serious question as to whether the HRC's fax machine was working properly throughout May 15, 2000.

¶19 We hold that substantial evidence indicates that CenTech attempted to file its entire brief on May 15, 2000, but it was prevented from doing so because of communication errors with the HRC's fax machine. Substantial evidence also shows that CenTech attempted to call and rectify the technical problems on May 15, 2000, but it could not do so because an HRC representative was unavailable. Accordingly, we hold that the District Court erred in finding that the HRC's findings and conclusions were not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

¶20 Furthermore, we agree with CenTech that pursuant to the Department's own regulations, it has the authority to suspend, waive or modify its rules to prevent manifest prejudice to a party, assure a fair hearing, or afford substantial justice. The facts of this case justify such action. It unreasonably elevates form over substance to dismiss CenTech's administrative appeal after CenTech repeatedly attempted to timely fax its appeal brief but could not due to communication errors with the HRC's fax machine. CenTech attempted to telephone the HRC regarding the problem, and it mailed the brief on the due date. Certainly, dismissal of this appeal defied substantial justice and resulted in manifest prejudice to CenTech. CenTech does not have to "assume the risk" of a facsimile malfunction any more than it would have to assume the risk that the front door to the HRC offices would be locked or malfunctioning at 4:50 p.m. on May 15, 2000. If, as the record here demonstrates, CenTech made a timely, good faith attempt to file the brief by approved methods, justice requires that the attempt be honored. Accordingly, we further hold that the District Court erred in concluding that the HRC's decision to dismiss CenTech's appeal was not arbitrary, capricious or characterized by an abuse of discretion.

¶21 We reverse and remand to the District Court for an order directing the HRC to receive CenTech's appeal brief and proceed with CenTech's appeal in this matter.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ JIM RICE