DA 07-0170

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 248

ROBERT JACOBSEN,

      Plaintiff, Appellee and Cross-Appellant,

  v.

ALLSTATE INSURANCE COMPANY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV-03-201(D)
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Dennis J. Tighe (argued), Paul R. Haffeman; Davis, Hatley, Haffeman & Tighe, P.C.; Great Falls, Montana

      For Appellee:

            Daniel P. Buckley (argued), Lucas J. Foust; Foust Buckley Law Office, P.C.; Bozeman, Montana

      For Amicus Curiae:

            Lawrence A. Anderson (argued); Attorney at Law, Great Falls, Montana (for Montana Trial Lawyers Association)

                    Argued: September 24, 2008
                 Submitted: November 18, 2008
                  Decided: July 23, 2009

Filed:

             _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Robert Jacobsen ("Jacobsen") filed a complaint against Allstate Insurance Company ("Allstate") alleging, *inter alia*, statutory and common law bad faith, intentional and negligent infliction of emotional distress, and actual malice. Jacobsen prevailed in a jury trial on his bad faith claims, and was awarded both compensatory and punitive damages. Allstate now appeals from various rulings of the Eighth Judicial District Court, Cascade County. Jacobsen cross-appeals from the District Court's decision not to compel discovery, and from its determination that Jacobsen's emotional distress was not sufficiently severe to be legally compensable. We affirm in part, reverse in part, and remand to the District Court for proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     Jacobsen sustained injuries in an auto accident caused by Allstate's insured. Allstate accepted liability for the claim, and began negotiating a settlement with Jacobsen. Allstate's claims adjuster processed Jacobsen's claim pursuant to Allstate's Claim Core Process Redesign ("CCPR"), which implemented certain policies and guidelines designed to promote quick settlements with unrepresented claimants. Six days after the accident, Jacobsen settled with Allstate for $3,500 and 45 days of "open medicals"[1], and signed a written release. Nearly a month later, Jacobsen asked Allstate to rescind the release because he had experienced shoulder pain while mowing his lawn.

---

[1] The term "open medicals" evidently means that Jacobsen would have been permitted to seek medical care for injuries caused by the accident for 45 days following settlement.

Allstate refused to rescind the release, and Jacobsen retained Great Falls attorney Richard Martin to assist him. After Martin was retained, Allstate rescinded the release, and settled the claim for approximately $200,000.

¶3 Jacobsen subsequently retained new counsel, and filed a complaint against Allstate seeking compensatory damages for, *inter alia*, violation of the Montana Unfair Trade Practices Act ("UTPA"), common law bad faith, intentional and negligent infliction of emotional distress, and actual malice.

¶4 Prior to trial, Allstate moved the District Court for summary judgment on Jacobsen's negligent and intentional emotional distress claims. The court granted Allstate's motion on the grounds that Jacobsen failed to prove serious or severe emotional distress as required by this Court's decision in *Sacco v. High Country Independent Press*, 271 Mont. 209, 896 P.2d 411 (1995). Just prior to trial, the court clarified that its ruling also prohibited Jacobsen from presenting evidence of emotional distress damages arising out of Allstate's alleged bad faith and actual malice. In the court's view, our decision in *Sacco* imposed a duty upon a trial court to determine, as a threshold matter of law, that a plaintiff has proven his emotional distress is serious or severe before allowing any evidence of such to be presented to the jury, notwithstanding that the damages claimed are parasitic to the plaintiff's underlying cause of action. Acting as the gatekeeper, the court concluded that Jacobsen had not met the serious or severe threshold.

3

¶5 On the eve of Jacobsen's trial, we issued our decision in *Sampson v. Nat'l Farmers Union Property and Casualty Co.*, 2006 MT 241, 333 Mont. 541, 144 P.3d 797, holding that attorney fees were not recoverable as compensatory damages under the UTPA. Allstate moved the District Court to reconsider its prior ruling that Jacobsen could claim attorney fees as compensatory damages. In denying Allstate's motion, the District Court recognized that our decision in *Sampson* would generally preclude Jacobsen from recovering attorney fees under the UTPA. However, the court determined that Jacobsen's claim for attorney fees fell within an equitable exception to the generally applicable American Rule applied in *Sampson*. The District Court's decision was crucial to Jacobsen's case, because Jacobsen sought only two types of compensatory damages—emotional distress and attorney fees—and the court had already concluded that Jacobsen could not recover damages for emotional distress. Had it determined that Jacobsen's attorney fees were not recoverable as compensatory damages, he would have lacked a predicate offense upon which to base his claim for punitive damages, and his lawsuit would have been subject to dismissal for lack of damages.

¶6 The jury returned a verdict in favor of Jacobsen, finding that Allstate was liable for both common law and statutory bad faith, awarding as compensatory damages the attorney fees and costs incurred by Jacobsen in settling the underlying claim. The jury also awarded $350,000 in punitive damages based upon its finding that Allstate acted with actual malice in settling Jacobsen's claim.

4

¶7 Both prior to and during the jury trial, the District Court made several discretionary rulings now on appeal: 1) granting Jacobsen's motion to exclude evidence that he signed a release in initially settling his claim, and refusing Allstate's proposed jury instruction regarding the legal effect of a release; 2) denying Allstate's motion to exclude testimony or argument that Allstate should or could have "advance paid" Jacobsen's wages in accordance with industry standards; 3) denying Allstate's motion for judgment as a matter of law on the grounds that Jacobsen presented sufficient evidence of actual malice to support an award of punitive damages; and 4) denying Jacobsen's various motions to compel discovery of the "McKinsey documents." In the interest of brevity, facts relevant to those issues are set forth where necessary below.

## ISSUES

¶8 We restate the issues on appeal:

¶9 1. In the context of a common law bad faith claim against an insurer, are a third-party plaintiff's attorney fees and costs incurred in settling the underlying claim recoverable as an element of damages?

¶10 2. Did the District Court err in allowing Jacobsen to introduce testimony regarding Allstate's refusal to "advance pay" Jacobsen's lost wages, and disallowing Allstate's proposed jury instruction regarding liability for refusing to advance pay the lost wages?

¶11 3. Did the District Court err in concluding there was sufficient evidence of actual malice to support an award of punitive damages?

¶12 4. Did the jury instructions and jury verdict form misstate the law and unfairly prejudice Allstate?

¶13 5. Did the District Court err in granting Jacobsen's motion to exclude evidence of the legal effect of the release and refusing Allstate's proposed jury instruction regarding the release?

5

¶14    6.  Did the District Court err in denying Jacobsen's various motions to compel discovery of the "McKinsey documents?"

¶15    7.  Did the District Court err in ruling that Jacobsen was required to prove serious or severe emotional distress in order to recover emotional distress damages arising out of the underlying bad faith claim?

## DISCUSSION

¶16    1.  In the context of a common law bad faith claim against an insurer, are a third-party plaintiff's attorney fees and costs incurred in settling the underlying claim recoverable as an element of damages?

¶17    Generally, we review a district court's decision regarding an award of attorney fees for abuse of discretion. *In re G.M.*, 2009 MT 59, ¶ 10, 349 Mont. 320, 203 P.3d 818. However, judicial discretion must be guided by the rules and principals of law; thus the appellate standard of review is plenary to the extent a discretionary ruling is based upon a conclusion of law. *State v. Mackrill*, 2008 MT 297, ¶ 37, 345 Mont. 469, 191 P.3d 451. The District Court's determination that Jacobsen's attorney fees were recoverable as an element of damages is a conclusion of law which we review for correctness. *Ruhd v. Liberty Northwest Ins. Corp.*, 2004 MT 236, ¶ 13, 322 Mont. 478, 97 P.3d 561.

¶18    There is no dispute that Montana follows the well established American Rule, which provides that a party prevailing in a lawsuit is generally not entitled to attorney fees absent a specific contractual provision or statutory grant. *Sampson*, ¶ 15.  The UTPA does not contain a statutory grant of attorney fees for insurance bad faith actions. *Sampson*, ¶ 22.  We held in *Sampson* that pursuant to the American Rule, a third-party claimant may not recover attorney fees incurred in settling a claim for bad faith as an element of damages under the UTPA.  Specifically, we noted that "[t]he Legislature did

6

not construct the UTPA to provide for the recovery of attorney fees and therefore we cannot construe it to do so." ¶ 22.

¶19   As in *Sampson*, Jacobsen is a third-party claimant who incurred attorney fees in settling an underlying claim, and claimed those fees and costs as an element of damages in a subsequent action for insurance bad faith.  Jacobsen apparently concedes, and we agree, that pursuant to *Sampson*, his claim for attorney fees is subject to the American Rule.  However, he argues the District Court correctly awarded attorney fees under an exception to the American Rule.  Our analysis of this issue is therefore premised on the following: attorney fees are not a recoverable element of damages in a claim for insurance bad faith, whether brought under the UTPA or the common law, absent an exception to the American Rule.

¶20   The District Court relied on two exceptions to the American Rule in determining that Jacobsen's attorney fees were recoverable:  the "insurance exception," and the "equitable exception."  Allstate argues that neither of the exceptions is applicable to this case, and there is neither "judicial nor legislative inclination to extend their rationale to third party insurance bad faith claims."  Jacobsen contends the exceptions are applicable where the party asserting attorney fees as damages cannot be made whole without such an award.

¶21   "The equitable exception to the [American] rule is available in those unique factual situations in which a party is forced into a frivolous lawsuit and must incur attorney's fees to dismiss the claim."  *Goodover v. Lindeys, Inc.*, 255 Mont. 430, 447,

7

843 P.2d 765, 775 (1992). This exception has been narrowly construed, and its application is confined to situations in which the individual claiming fees has been forced into litigation through no fault of his own. *See Foy v. Anderson*, 176 Mont. 507, 580 P.2d 114 (1978) (the defendant was a passenger in an auto accident where the individual at fault sought to join her as a third party in the case, asserting that she had filed a claim against him, when in fact she had not); *Holmstrom Land Co. v. Hunter*, 182 Mont. 43, 595 P.2d 360 (1979) (the defendant water commissioner was sued by a landowner when, pursuant to a district court order, he padlocked the landowner's headgate for failure to pay fees); *Stickney v. State, Cnty. of Missoula*, 195 Mont. 415, 636 P.2d 860 (1981) (the defendant justice of the peace was sued in her personal capacity after finding courtroom spectators in contempt and ordering them to leave, where no basis for personal liability existed). As we explained in *Goodover*, an individual's position as the plaintiff in litigation will normally preclude application of the equitable exception to the American Rule. *Goodover*, 255 Mont. at 447. Jacobsen's position as plaintiff in this litigation renders the equitable exception inapplicable. In contrast to the situations in which we have applied the equitable exception, Jacobsen was not forced into litigation, notwithstanding that he felt compelled to file suit as a result of Allstate's bad faith. Ultimately, Jacobsen presents neither authority nor policy sufficiently compelling for this Court to depart from our practice of "narrowly construing" the equitable exception to the American Rule.

8

¶22 Nor do we find the insurance exception applicable in the instant case. The insurance exception arises where an insurer breaches its duty to defend or indemnify the insured party, forcing the insured "to assume the burden of legal action to obtain the full benefit of the insurance contract . . . ." *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 36, 315 Mont. 231, 69 P.3d 652. This exception is justified by the contractual relationship between the insurer and the insured, and the enhanced fiduciary obligation which arises therefrom. *Brewer*, ¶ 37. We refused to extend the insurance exception to third-party claimants, as it would undermine the fundamental precept of the exception and "drive a stake into the heart of the American Rule." *Brewer*, ¶ 40. Jacobsen argues that our holding in *Brewer* is limited to contract theory—that it does not preclude attorney fees to a third party who proves tortious conduct by the insurer. However, our decision in *Brewer* was based upon the lack of fiduciary duty running from an insurer to a third-party claimant. The same logic applies here: Allstate did not have a fiduciary duty to Jacobsen, because he was not a party to the insurance contract. The rationale underlying the insurance exception to the American Rule is the existence of a fiduciary duty, and no such duty exists here.

¶23 While this Court is at liberty to modify and apply the exceptions to the American Rule in the absence of legislative preemption (*Brewer*, ¶ 24) we decline to extend the exceptions to allow attorney fees as an element of damages in the context of third party insurance bad faith claim. The American Rule is a foundation of our jurisprudence, and we must narrowly construe the exceptions lest they swallow the rule. Jacobsen's

9

argument that attorney fees must be added to his recovery if the award is to truly make him whole is contrary to the generally applicable American Rule. *Schuff v. A. T. Klemens & Son*, 2000 MT 357, ¶ 97, 303 Mont. 274, 16 P.3d 1002; *citing Norfolk & Western Ry. Co. v. Liepelt*, 440 U.S. 490, 495, 100 S. Ct. 755, 758 (1980). In the context of bad faith claims brought under the UTPA, the legislature is the appropriate forum to rectify what we continue to recognize as a potentially unfair gap in existing law. *See Sampson*, ¶ 22. Given that the legislature has not deemed an award of attorney fees appropriate under the UTPA, it would be inconsistent to allow such damages to a third party claimant under the common law. Ultimately, we do not find Jacobsen's arguments in favor of a new exception to the American Rule sufficiently compelling to create such an inconsistency.

¶24 Moreover, we agree with Allstate that costs incurred by Jacobsen's attorney in settling the underlying claim are not recoverable as compensatory damages. Jacobsen first argues that Allstate waived any objection to costs on appeal because it failed to specifically object to the language regarding costs in the jury instruction, citing *Seltzer v. Morton*, 2007 MT 62, 336 Mont. 225, 154 P.3d 561. *Seltzer* merely sets forth the familiar proposition that a litigant who fails to lodge <u>any</u> objection to a jury instruction waives any subsequent objection on appeal. *Seltzer*, ¶ 54. Here, Allstate did object to the jury instruction contending that attorney fees were not recoverable. To say that Allstate's counsel was required to utter the words "and costs" in order to preserve its objection to the jury instruction would represent an unreasonable elevation of form over substance. *See e.g. Centech Corp. v. Sprow*, 2001 MT 298, ¶ 20, 307 Mont. 481, 38 P.3d 812.

10

Notwithstanding this discussion, we are unaware of any statutory authority allowing recovery of costs incurred in settling a claim.

¶25    2.    Did the District Court err in allowing Jacobsen to introduce testimony regarding Allstate's refusal to "advance pay" Jacobsen's lost wages, and disallowing Allstate's proposed jury instruction regarding liability for refusing to advance pay the lost wages?

¶26    This Court's standard of review of rulings on the admissibility of evidence, including oral testimony, is whether the district court abused its discretion. *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, 103 P.3d 503. We similarly review a district court's refusal to issue a proposed jury instruction for abuse of discretion. *Rohrer v. Knudson*, 2009 MT 35, ¶ 14, 349 Mont. 197, 203 P.3d 759. However, to the extent the district court's discretionary ruling is based upon a conclusion of law, our review is plenary. *Mackrill*, ¶ 37.

¶27    The District Court granted summary judgment in favor of Allstate regarding Allstate's liability under the UTPA for refusing to "advance pay" Jacobsen's lost wages, ruling that Allstate's conduct regarding lost wages could not be considered an attempt to "leverage an immediate settlement on terms favorable to Allstate." Allstate subsequently filed a motion *in limine* seeking to exclude any testimony regarding the advance pay of lost wages. The District Court granted Allstate's motion, barring Jacobsen from introducing testimony suggesting Allstate had a legal duty to advance pay his lost wages, but stated that its ruling did not "preclude Plaintiff from presenting testimony that Allstate could have advanced lost wages to Jacobsen, or that it should have, in accordance with common or standard industry practices."

11

¶28    Allstate argues that by granting summary judgment, the District Court established as the law of the case that Allstate's refusal to advance pay lost wages was not an attempt to "leverage an immediate settlement on terms favorable to Allstate" in violation of the UTPA.  Therefore, they argue, allowing any testimony regarding the appropriateness of Allstate's decision not to advance pay Jacobsen's lost wages contravened the law of the case and constituted reversible error.  Jacobsen argues the testimony regarding the advance pay of lost wages merely provided factual context for the jury regarding the circumstances surrounding the initial claim settlement, and the District Court properly allowed the testimony on that basis.  We agree.

¶29    The law of the case doctrine expresses generally the courts' reluctance to reopen issues that have been settled during the course of litigation.  *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352; *In re Estate of Snyder*, 2007 MT 146, ¶ 27, 337 Mont. 449, 162 P.3d 87.  Our jurisprudence applying the doctrine has generally arisen in the context of binding both the parties and the district court to the decisions of this Court in any subsequent proceedings, a concept properly referred to as the Mandate Rule.  Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* vol. 18B, § 4478.3, 733 (3d ed., West 2005).  We have also held this principal applicable to the prior rulings of a trial court in the same case.  *See State v. Carden*, 170 Mont. 437, 439, 522 P.2d 738, 740 (1976).

¶30    The District Court's order on summary judgment addressed the sufficiency of Jacobsen's Count 4, which alleged a violation of the UTPA by Allstate's failure to

12

advance pay Jacobsen's wages when their insured's liability was reasonably clear. Allstate argued on summary judgment, and the District Court agreed, that pursuant to § 33-18-242(5), MCA, Allstate had a reasonable basis in law for not advance paying Jacobsen's wages, therefore it could not be held liable for violating the UTPA on that basis. The District Court's ruling established as the law of the case that Allstate's refusal to advance pay wages could not be considered an attempt to leverage settlements on the other portions of Jacobsen's claim in violation of the UTPA, because Allstate had a reasonable basis in law for refusing to do so.

¶31    However, the District Court's ruling did not, as Allstate suggests, have the effect of barring any testimony regarding the appropriateness of Allstate's decision not to advance pay Jacobsen's wages. Rather, the law of the case as established on summary judgment was that Allstate had no legal duty under the UTPA to advance pay Jacobsen's wages, not that its refusal to advance pay the wages could not be considered by the jury in any context. The District Court's order on Allstate's motion *in limine* reflected this distinction by barring Jacobsen's expert from testifying that Allstate had a legal duty to advance pay Jacobsen's lost wages, but allowing testimony suggesting that it could or should have advance paid the wages in accordance with standard or common industry practices. While Allstate may be correct that the distinction was lost on the jury, that fact does not compel us to conclude that the District Court erred in allowing the testimony. Ultimately, if there was any misconception caused by the expert's testimony, Allstate's counsel had an opportunity to correct it on cross-examination. The District Court did not

13

abuse its discretion by allowing Jacobsen's witness to testify as to his expert opinion on the standard or common industry practices with respect to advancing lost wages, or to the effect Allstate's refusal to advance the wages had on Jacobsen's decision to settle.

¶32    Nor did the District Court err in refusing Allstate's proposed jury instruction Number 25.  Allstate argues that it offered the following instruction in order to mitigate the effect of the District Court's erroneous evidentiary ruling: "Before December 6, 2001, Montana law did not impose on Allstate a legal duty to advance pay lost wages to Mr. Jacobsen, whether he demanded payment or not, before final settlement of his personal injury claim.  Up until that date, Allstate was not required to advance pay lost wages, so not advancing payment is not grounds for liability against Allstate."

¶33    The District Court acted within its discretion to refuse Allstate's proposed instruction, for the same reason its evidentiary ruling on the issue of advance pay was not in error.  While Allstate's proposed instruction was a correct statement of the law with respect to Allstate's liability under the UTPA, violation of the UTPA based on those facts was no longer at issue.  The District Court's earlier grant of summary judgment in favor of Allstate on Jacobsen's Count 4 (violation of the UTPA by refusal to advance pay lost wages) rendered Allstate's proposed instruction irrelevant.

¶34    3.  Did the District Court err in concluding there was sufficient evidence of actual malice to support an award of punitive damages?

¶35    We review a district court's decision to deny a motion for judgment as a matter of law de novo.  *Vader v. Fleetwood Enterprises, Inc.*, 2009 MT 6, ¶ 20, 348 Mont. 344, 201 P.3d 139.

14

¶36 At the close of Jacobsen's case, Allstate moved the court for judgment as a matter of law[2] on the basis that Jacobsen failed to present clear and convincing evidence of actual fraud or actual malice in support of his claim for punitive damages. The District Court denied the motion, ultimately finding that as a matter of law, Jacobsen presented sufficient evidence to allow the punitive damages claim to be submitted to the jury. The jury ultimately awarded punitive damages based on its conclusion that Allstate acted with actual malice in settling Jacobsen's claim.

¶37 Allstate argues on appeal that the District Court erred in failing to grant its motion for judgment as a matter of law with respect to the malice claim which supported the punitive damage award. Allstate's argument is premised on the erroneous assumption that the District Court was required to apply the evidentiary standards set forth in the punitive damage statutes in reviewing Allstate's motion. In essence, Allstate suggests the District Court should have acted as the preliminary finder of fact, weighing the quality of the evidence of malice to determine if the jury could find it "clear and convincing" and beyond "serious and substantial doubt." Section 27-1-221(5), MCA. This view fundamentally miscomprehends the standard by which a district court must review a motion for judgment as a matter of law.

¶38 A motion for judgment as a matter of law is not a device by which the party bringing the motion can "invoke a reviewing court's power to reexamine and reweigh the evidence before the jury," rather, it must demonstrate a complete absence of any evidence

---

[2] Allstate inaccurately uses the term "motion for a directed verdict" rather than "motion for judgment as a matter of law" in describing the motion evidently made under M. R. Civ. P. 50(b).

which would justify submitting an issue to a jury. *Vader*, ¶ 32. Moreover, when considering such a motion, all evidence and any legitimate inference which might be drawn from that evidence must be considered in a light most favorable to the party opposing the motion. *Vader*, ¶ 32. We have noted that district courts must "exercise the greatest self-restraint in interfering with the constitutionally mandated processes of a jury decision." *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 13, 336 Mont. 105, 152 P.3d 727.

¶39 In order to prevail on its motion, Allstate was required to show "a complete absence of any evidence" which would justify submitting to the jury the issue of whether Allstate acted with actual malice in settling Jacobsen's claim. In other words, Allstate was required to show that Jacobsen failed to present sufficient evidence to satisfy the statutory elements of malice set forth in § 27-1-221, MCA:

> (2) A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
> > (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
> >
> > (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

¶40 The District Court was not, as Allstate suggests, required to find that Jacobsen established the elements of malice by "clear and convincing evidence" as required by § 27-1-221(5), MCA. Whether the evidence was sufficiently clear and convincing to

16

establish liability was an issue reserved for the trier of fact, not the District Court. Section 27-1-221(6), MCA.

¶41 We must therefore determine whether Jacobsen presented any evidence which would justify submitting the issue of Allstate's alleged malice to the jury. The record indicates Jacobsen presented evidence that Allstate had knowledge that the CCPR method used to settle Jacobsen's claim would probably result in his receiving substantially less compensation for his injuries than he would receive if he was represented by an attorney. Allstate does not dispute that receiving less compensation for his injuries would have created a "high probability of injury" to Jacobsen, nor does it suggest that Allstate was not "indifferent to" the high probability that an unrepresented claimant would receive less than a represented claimant. Section 27-1-221(2)(a), (b), MCA. That was in fact the stated purpose of the CCPR. Essentially, the evidence Jacobsen presented was introduced for the purpose of showing that by promoting the quick settlement of claims brought by unrepresented claimants (including Jacobsen) without adequate investigation, the CCPR itself, and as applied to Jacobsen, created a high probability of injury to unrepresented claimants, a probability that Allstate was intentionally disregarding. Jacobsen also presented evidence designed to show Allstate knew Jacobsen's injuries were potentially more severe than either party originally assumed, and that it deliberately proceeded to act with indifference to this information in refusing to reopen Jacobsen's claim. The District Court did not err in submitting Jacobsen's malice claim to the jury. Allstate failed to demonstrate a complete absence of

17

any evidence that would justify submitting Jacobsen's malice claim to the jury. *Vader*, ¶ 32. Whether the evidence was clear and convincing to the District Court is ultimately irrelevant.

¶42    4.  Did the jury instructions and jury verdict form misstate the law and unfairly prejudice Allstate?

¶43    We review a district court's jury instructions for abuse of discretion. *Olson v. Shumaker Trucking and Excavating Contractors, Inc.*, 2008 MT 378, ¶ 22, 347 Mont. 1, 196 P.3d 1265.  We must determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Bullman*, 2009 MT 37, ¶ 15, 349 Mont. 228, 203 P.3d 768.  In undertaking this review, we consider the jury instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, 162 P.3d 106.

¶44    The District Court instructed the jury in Instructions 8 and 9 respectively, that it should find Allstate liable for bad faith under the UTPA or the common law if it found that Allstate "misrepresent[ed] pertinent facts regarding an insurance <u>claim</u> . . . ." The instructions were presumably based upon the codification of the UTPA in § 33-18-201, MCA, which states: "No person may, with such frequency as to indicate a general business practice, do any of the following: (1) misrepresent pertinent facts or insurance policy provisions relating to <u>coverages</u> at issue." Allstate argues that by substituting the word "claims" for "coverages" the District Court changed the fundamental meaning of the statute.

18

¶45 At the outset, we note that Allstate's argument as applied to Instruction 9, which addresses Jacobsen's common law bad faith claim, is illogical. Allstate presents no authority in support of its contention that the District Court was required to use language from the UTPA to instruct the jury on common law bad faith. We therefore turn to whether the District Court's modification of the statutory language in Instruction 8 was an abuse of discretion.

¶46 There is no requirement that a district court adopt verbatim the applicable statutory language when instructing the jury, "so long as the modification does not alter the meaning of the statute." *State v. Anderson,* 2008 MT 116, ¶¶ 23, 24, 342 Mont. 485, 182 P.3d 80. In determining how to instruct the jury, the district court should take into consideration both the parties' theories and the evidence presented at trial. *Cechovic v. Hardin & Assoc., Inc.*, 273 Mont. 104, 116, 902 P.2d 520, 527 (1995). Ultimately, a district court's modification of the statutory language should maintain conformity with the law, while remaining appropriate in the factual context of the case.

¶47 Essentially, Allstate contends that the court, through its jury instruction, erred in interpreting § 33-18-201(1), MCA, as prohibiting the misrepresentation of facts as to "claims" when the statute only mentions "coverages." We reiterate that the law does not require that a jury instruction reflect the exact wording of the statute, rather, it requires that the court refrain from changing the meaning of the statute. *Anderson,* ¶¶ 23, 24. The District Court's instruction did not change the meaning of the statute. It would make little sense to limit the statutory prohibition on factual misrepresentation to "coverages,"

19

when the issue of insurance coverage is essentially a contractual or legal issue focusing on the policy provisions rather than on factual representations from an insurer. Since the submission and processing of insurance claims is a more fact-driven process than the issue of insurance coverage, we conclude that the court did not err in including "claims" within the purview of the statutory prohibition.

¶48 5. Did the District Court err in granting Jacobsen's motion to exclude evidence of the legal effect of the release and refusing Allstate's proposed jury instruction regarding the release?

¶49 Upon Jacobsen's motion, the District Court barred Allstate from "presenting any evidence or making any assertion as to the legal effect of the release" signed by Jacobsen. Consistent with this ruling, the court refused Allstate's proposed jury instruction stating that a release is a contract which can be rescinded under certain circumstances. Allstate argues that because it relied upon the release in its subsequent dealings with Jacobsen, it had a reasonable basis in law for contesting his demands, and it therefore should have been allowed to present evidence in support of that defense. Allstate's argument is premised on its contention that, as a matter of law, it was entitled to rely on the release up until the date it was rescinded.

¶50 The District Court's ruling on Jacobsen's motion *in limine* is an evidentiary ruling which we review for an abuse of discretion. *Snell*, ¶ 17. We also review the District Court's decision not to issue Allstate's proposed jury instruction for abuse of discretion. *Rohrer*, ¶ 14. To the extent the court's ruling on the proposed jury instruction was a conclusion of law, our review is plenary. *Mackrill*, ¶ 37.

20

¶51 A release is a contract, governed by contract law. *Westfall v. Motors Ins. Corp.*, 140 Mont. 564, 568, 374 P.2d 96, 98-99 (1962). A rescission "amounts to the unmaking of a contract, or an undoing of it from the beginning . . . ." 17B C.J.S. *Contracts* § 422 (1999). To rescind a contract is to declare it "void in its inception and to put an end to it as though it never were." *Black's Law Dictionary* 1306 (6th ed. West 1990). Because Allstate's rescission of Jacobsen's release effectively voided the release from the beginning, it was not, as a matter of law, entitled to rely upon the legal effect of the release prior to its rescission. Essentially, once Allstate rescinded the release, it had no legal effect. The District Court did not abuse its discretion by so instructing the jury.

## CROSS-APPEAL

¶52 6. Did the District Court err in denying Jacobsen's various motions to compel discovery of the "McKinsey documents?"

¶53 We review a district court's discretionary rulings, including rulings regarding discovery matters, for abuse of discretion. *State v. Dunning*, 2008 MT 427, ¶ 21, 347 Mont. 443, 198 P.3d 828. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Dunning*, ¶ 21.

¶54 The CCPR claims practices central to the issues in this case were implemented pursuant to the so called "McKinsey documents." The McKinsey documents are "the product of Allstate's CCPR pre-implementation study, the source from which the CCPR was condensed." At the time of Jacobsen's initial discovery request and corresponding

21

motion to compel the CCPR, he was unaware of the existence of the McKinsey documents.

¶55 When Jacobsen became aware of the McKinsey documents, he sought leave of court to 1) file an amended complaint revising and adding individual claims, 2) assert new class action claims against Allstate, and 3) conduct additional discovery. The District Court denied Jacobsen leave to add class claims or to conduct additional discovery, finding that Jacobsen failed to establish due diligence or excusable neglect for his failure to conduct timely discovery of the McKinsey documents. The court's order treated the denied motions as interdependent, finding that "the nature of his proposed class claims and the expansive scope of his request for additional discovery will cause substantial prejudice and undue delay, burden, and expense by transforming what is essentially an individual bad faith action into a class action institutional bad faith lawsuit that will require significant additional discovery and substantially increase the amount and complexity of pretrial litigation." Jacobsen filed two subsequent motions urging the court to allow discovery of the McKinsey documents, not in the context of an institutional bad faith action, but as relevant to Jacobsen's individual claims. The court denied both motions.

¶56 On appeal, Jacobsen argues the court erred in denying his various motions directed at compelling discovery of the McKinsey documents. He asserts that the McKinsey documents were, (albeit unwittingly), squarely within both his initial discovery requests and the corresponding motion to compel, thus the District Court should have allowed

22

discovery of the documents. Allstate, on the other hand, engages in an exhaustive review of the procedural history of the discovery phase of this case, arguing that the District Court correctly determined that granting Jacobsen's motions would cause prejudice and delay, and that Jacobsen failed to demonstrate due diligence or excusable neglect sufficient to re-open discovery.

¶57 Allstate's focus on the procedural history of the discovery phase of this case is misplaced. As the District Court candidly noted, the McKinsey documents were squarely within Jacobsen's original discovery request. Importantly, in briefing to this Court, Allstate does not dispute that the McKinsey documents were within the scope of Jacobsen's original discovery request; nor does it dispute the relevance of the McKinsey documents. While both the format and timing of Jacobsen's motions regarding the McKinsey documents were unduly confusing, the issue before the District Court was not whether to re-open discovery, but whether to compel Allstate to produce documents that were within Jacobsen's original discovery request. It was therefore unnecessary to determine whether Jacobsen demonstrated due diligence or excusable neglect, because he was not seeking to re-open discovery.

¶58 Ultimately, district courts must remain mindful of the fundamental purpose of discovery—"to promote ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith." *Menholdt v. State, Dept. of Revenue*, 2009 MT 38, ¶ 10, 349 Mont. 239, 203 P.3d 792; *citing Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 392 (1947). "Discovery fulfills this purpose by assuring the mutual knowledge of all

23

relevant facts gathered by both parties which are essential to proper litigation." *Menholdt*, ¶ 10. The McKinsey documents were indeed critical to Jacobsen's theory that Allstate's policies regarding unrepresented claimants constituted bad faith. The District Court acted without conscientious judgment in denying Jacobsen's motions to compel the McKinsey documents, notwithstanding that the discovery deadline had passed. The District Court's ruling resulted in substantial injustice to Jacobsen, thus the court was in error.

¶59    7. Did the District Court err in ruling that Jacobsen was required to prove serious or severe emotional distress in order to recover emotional distress damages arising out of the underlying bad faith claim?

¶60    The District Court determined that Jacobsen's emotional distress damages were not compensable because he failed to make a threshold showing that his emotional distress was serious or severe. In reaching this conclusion, the court applied the standard set forth in *Sacco v. High Country Independent Press*, 271 Mont 209, 896 P.2d 411 (1995). Jacobsen argues on appeal that the court erred in applying the *Sacco* standard, asserting that *Sacco* does not set a standard for proving emotional distress damages for torts in general, but rather sets the standard for maintaining an independent action for intentional or negligent infliction of emotional distress. Allstate asserts that pursuant to our holding in *First Bank (N.A.)-Billings v. Clark*, 236 Mont. 195, 771 P.2d 84 (1989),

Jacobsen was required to demonstrate a physical manifestation of his emotional distress, notwithstanding that his claim was parasitic to an underlying tort.[3]

¶61 The District Court's determination that Jacobsen was required to make a threshold showing of serious or severe emotional distress in order to present evidence of such damages to the jury was a conclusion of law. Our standard of review is therefore plenary. *Mackrill*, ¶ 37.

¶62 In *Sacco*, this court undertook an extensive review of our jurisprudence governing the compensability of emotional distress in Montana. We explicitly recognized, for the first time, the independent torts of negligent or intentional infliction of emotional distress. *Sacco*, 271 Mont. at 236. Though we recognized these torts as viable stand-alone causes of action, we established a heightened standard of proof, requiring that a plaintiff claiming intentional or negligent infliction of emotional distress must make a threshold showing to the court that their emotional distress is "serious or severe" in order to proceed to trial. *Sacco*, 271 Mont. at 236, 237.

¶63 Later, in *Vortex Fishing Systems, Inc. v. Foss*, we held in the context of emotional distress damages arising out of a human rights claim that "the tort standard [*Sacco*] for proof of independent actions for emotional distress does not apply . . . ." 2001 MT 312, ¶ 34, 308 Mont. 8, 38 P.3d 836. Rather, "the severity of the harm should govern the

---

[3] Allstate also seems to assert that emotional distress damages are not available in the context of a third-party UTPA claim. This assertion is without merit. Emotional distress damages are available in the context of insurance bad faith, whether brought under the UTPA or the common law. *See Gibson v. Western Fire Ins. Co.*, 210 Mont. 267, 682 P.2d 725, (1984)*; Lorang v. Fortis Ins. Co.*, 2008 MT 252, 345 Mont. 12, 192 P.3d 186.

amount, not the availability, of recovery." *Vortex*, ¶ 33. However, in so holding, we did not discuss those pre-*Sacco* cases which set the then-applicable standard for evaluating parasitic claims for emotional distress.

¶64   In *First Bank (N.A.)-Billings v. Clark*, we held that in the absence of a physical or mental injury, emotional distress damages arising out of an underlying tort are compensable only where the plaintiff can show the emotional distress suffered is "severe." *First Bank*, 236 Mont. at 206. In so holding, we adopted comment j of the Restatement (Second), of Torts § 46 (1965), which includes language indicating that the distress inflicted must be "so severe that no reasonable person could be expected to endure it." *First Bank*, 236 Mont. at 205, 206. We also unequivocally held that "[a] district court has the duty of determining the threshold question of whether any proof of such severe emotional distress exists sufficient to raise a question of fact for the jury." *First Bank*, 236 Mont at 206, 207. The *First Bank* court also cited *Johnson v. Supersave Markets, Inc.*, 211 Mont. 465, 686 P.2d 209 (1984), and *Noonan v. First Bank Butte*, 227 Mont. 329, 740 P.2d 631 (1987), for the proposition that absent a showing of a mental or physical injury, emotional distress is compensable only if the tortious conduct results in a "substantial invasion of a legally protected interest and . . . [caused] a significant impact on the person . . . ." *First Bank*, 236 Mont. at 205, 206.

¶65   Nor did we discuss the effect of the *First Bank* line of cases in *Seltzer v. Morton*, 2007 MT 62, 336 Mont. 225, 154 P.3d 561 (2007) (where we noted that the District Court erroneously instructed the jury to apply the *Sacco* "serious or severe" standard to a

26

claim for emotional distress damages parasitic to an underlying tort, but nonetheless indicated that the plaintiff had presented evidence of "serious or severe" emotional distress with "resultant physical complications") ¶ 119, n. 11; or in *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 190, 345 Mont. 12, 192 P.3d 186 (where we again held in the context of a parasitic claim for emotional distress damages arising out of a UTPA violation that the *Sacco* "serious or severe" standard does not apply). While this Court did not explicitly state in *Seltzer or Lorang* what, if any, standard should apply in evaluating a parasitic claim for emotional distress damages, we did cite to Montana Pattern Jury Instruction 2d 25.02, 15.01-03, which states that "[the law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress.] *Lorang*, n. 29. The comments to the instruction state that it should be given "where emotional distress damages are allowed in the absence of independent tort claims . . . ."

¶66  We recognize that our case law has created confusion as to what, if any, standard applies when evaluating damages for parasitic emotional distress claims: must the court act as a gatekeeper and reject claims that do not meet the threshold standard of serious or severe as suggested by the *First Bank* line of cases; or does the severity of the harm govern the amount, not the availability of recovery for parasitic emotional distress claims as suggested by *Vortex*, *Seltzer, and Lorang*? Ultimately, to hold that the standard for parasitic emotional distress damages is "serious or severe" would render meaningless the "heightened" standard we purported to establish in *Sacco* when we recognized the

27

viability of an independent cause of action for emotional distress. We therefore hold that the "serious or severe" standard announced in *Sacco* applies only to independent claims of negligent or intentional infliction of emotional distress. To the extent our earlier cases, including *First Bank*, *Johnson*, and *Noonan*, suggest that a plaintiff must make a threshold showing of serious or severe emotional distress before a claim for parasitic emotional distress damages is allowed to go to the jury, we overrule those decisions. As for emotional distress that is claimed as an element of damage for an underlying tort claim (parasitic emotional distress damages), we hereby explicitly adopt the standard set forth in the Montana Pattern Jury Instruction (M.P.I.2d 25.02, 15.01-03), cited in *Lorang*, and set forth above.

¶67 In conclusion, because the District Court erred in allowing attorney fees and costs as damages, we reverse the award of compensatory damages which was based solely on those fees and costs. Further, without an award of compensatory damages, there can be no award of punitive damages. *Stipe v. First Interstate Bank - Polson*, 2008 MT 239, ¶ 23, 344 Mont. 435, 188 P.3d 1063. Accordingly, we reverse the punitive damage award. We remand for a new trial in light of our holding that the court erred in not allowing the jury to consider emotional distress as an element of damages. A compensatory award for emotional distress, could, in the discretion of the jury, serve as a predicate for an award of punitive damages. We further direct the District Court on remand to compel production of the *McKinsey* documents.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ GARY L. DAY
District Court Judge Gary L. Day
sitting in for former Chief Justice Karla M. Gray

Justice Patricia O. Cotter concurs and dissents.

¶68 I fully concur in the Court's resolution of Issues Two, Three and Four. I also concur in the resolution of Issues Six and Seven, though because I would uphold the award of attorney fees, I would not reverse the awards of compensatory and punitive damages or remand for a new trial. I concur but write separately to express my views with respect to Issue Five. I dissent from our resolution of Issue One.

¶69 First, I concur with this Court's ultimate resolution of Issue Five—which addresses whether the District Court erred in granting Jacobsen's motion to exclude evidence of the legal effect of the release, and refusing Allstate's proposed jury instruction in that regard—but not on the basis of the Court's rationale at ¶ 51, which I find circular. Rather, I would affirm on this issue for the simple reason that there was sufficient evidence presented to enable the jury to understand the ramifications of the release situation with which it was presented. Moreover, the District Court correctly instructed the jury that a release has no binding effect after rescission. Allstate was not precluded from cross-examining on this point, or from underscoring this instruction in its

29

closing argument. Given these circumstances, I would not conclude that the District Court abused its discretion in the manner in which it ruled on these questions.

¶70 I dissent from the Court's resolution of Issue One. As the Court notes, our caselaw indicates that the equitable exception to the American Rule is reserved for those situations in which an individual seeking attorney fees has been forced into litigation through "no fault of his own." Opinion, ¶ 21. This is, of course, an equitable consideration based on the circumstances before a court. In this case it seems to me that Jacobsen was, in fact, forced into court by Allstate through no fault of his own. It is undeniably clear that even though Jacobsen was not a party to a contract with Allstate, Allstate had a statutory duty to settle the claim in good faith since liability was reasonably clear. *See* § 33-18-201(6), MCA. According to the jury, Allstate acted in bad faith, and thus violated its statutory duty to Jacobsen. This tortious conduct forced Jacobsen into the position of either doing nothing or seeking a vindication of his rights in a court of law. If Jacobsen had done nothing, Allstate would have thereby profited by its wrongful actions. Since "equity regards that as done which ought to have been done," *Shook v. Woodard*, 129 Mont. 519, 527, 290 P.2d 750, 754 (1955), principles of equity weigh in favor of granting Jacobsen attorney fees as damages for Allstate's bad faith, as he was compelled to hire an attorney in order to "convince" Allstate to settle his claim in good faith.

¶71 The Court states that "Jacobsen was not forced into litigation, notwithstanding the fact that he felt compelled to file suit as a result of Allstate's bad faith." Opinion, ¶ 21.

With due respect, the fine distinction between being "forced" to defend and "feeling compelled" to sue to vindicate one's rights is thin to illusory. In both instances, the wronged party has no real choice but to respond to the actions taken by the wrongdoer, if he wants to protect his rights. Here, Jacobsen, through no fault of his own, was injured by Allstate's insured. Allstate then acted in bad faith when it refused to properly settle his claim. It is clear in this case that it wasn't until Jacobsen hired an attorney that Allstate felt "compelled" to adhere to the duty it owed to Jacobsen to adjust his claim in good faith.

¶72 As recognized by the Court, the equitable exception to the American Rule permits an award of attorney fees to a party who is forced into a frivolous lawsuit and must incur attorney fees to defend against the claim. Opinion, ¶ 21 (quoting *Goodover v. Lindey's Inc.*, 255 Mont. 430, 447, 843 P.2d 765, 775 (1993)). I fully recognize that the cases cited by the Court, as well as others, *see e.g. Braach v. Graybeal*, 1999 MT 234, ¶ 10, 296 Mont. 138, 988 P.2d 761 (citing authorities), indicate that a party who initiates a suit—as opposed to a party who is forced to defend against one—*normally* cannot recover attorney fees under the equitable exception to the American Rule. *See* Opinion, ¶ 21. I agree that this consideration "normally" should apply, but it should not apply in every instance, and it should not apply under the circumstances presented here. Rather, I would conclude that the counterpart to the right of a *defendant* to recover fees for being forced into litigation should be recognized for similarly situated *plaintiffs*. Just as equity should operate on behalf of a defendant forced into frivolous litigation, it should operate

31

as well on behalf of a plaintiff whom a fact-finder concludes was forced to <u>file</u> litigation due to the bad faith—or, otherwise described, frivolous—conduct of the opposing party.

¶73    Here, Judge Sandefur found such an equitable exception to the American Rule, concluding that a plaintiff in a third party action against an insurer may recover fees if the insurer's actions compelled the plaintiff to file suit to recover what was due him under the liability policy, the fees were not incurred in relation to either a UTPA or tort action, and the fees are not otherwise recoverable under the Uniform Declaratory Judgment Act. It goes without saying that, if there was no bad faith, then the fees from the prior action would not have been recoverable.

¶74    Finally, I do not believe that the exception for plaintiffs which I espouse here would swallow the American Rule.  This is not "loser pays."  Rather, it is only the bad faith or frivolous loser who pays.  It is only fair, it seems to me, to accord the maligned plaintiff the same equitable considerations that we have historically accorded the maligned defendant.  Accordingly, I would conclude that the District Court did not err under these facts in allowing attorney fees and costs as damages.  I would affirm the award of attorney fees and dissent from the Court's failure to do so.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the Concurrence and Dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

32

Justice Jim Rice, concurring in part and dissenting in part.

¶75    I agree with the Court's disposition of Issues 1, 3, 6, and 7, but dissent from Issues 2, 4, and 5. I believe the rulings involved in these issues deprived Allstate of a fair trial.

¶76    Initially, the District Court ruled summarily that Allstate could not be held liable under the UTPA for failing to advance pay Jacobsen his lost wages, and indicated an intention to exclude evidence which would be contrary to this conclusion. However, at trial, the court permitted Jacobsen to offer Mr. Ramsey's expert testimony which, while not directly contradictory to the court's earlier order, clearly implied that Allstate was under such a duty. Perhaps realizing the potential confusion over the issue, the court told the jury:

> Mr. Ramsey is going to testify, most likely, in reference to some various legal rules or at least that they exist under the statues of the State of Montana and perhaps with general reference to some common law . . . he cannot and will not be allowed to testify as to what particular judicial decision, how they apply in this case and whether or not they have been violated in this case. At the end of the case, I will instruct you what the applicable law is.

After proceeding with Ramsey's testimony on the premise that it would later instruct the jury how to use his testimony about Allstate's failure to advance pay, the court failed to do so. The court did not provide the promised instructions, instead the court denied Allstate's request for and offering of a jury instruction which clarified Allstate did not have a legal duty to advance pay lost wages.

33

¶77 The Court dismisses Allstate's argument under Issue 2 by concluding the law of the case was only that Allstate did not have a legal duty under the UTPA, "not that its refusal to advance pay the wages could not be considered by the jury in any context." *Opinion*, ¶ 23. While this may resolve the issue in the Court's mind, it clearly does not resolve the question, in the jury's mind, of what use to make of Ramsey's testimony. Without the promised instruction, the jury was left with the impression from the substantial testimony regarding Allstate's duty to advance pay wages that Allstate had violated the UPTA for that reason alone, essentially reversing the District Court's earlier ruling in Allstate's favor on the issue. I would conclude that the District Court abused its discretion. *Rohrer v. Knudson,* 2009 MT 35, ¶ 14, 349 Mont. 197, 203 P.3d 759.

¶78 I also disagree with the Court's analysis of Issue 5, regarding the effect of the signed release. The Court dismisses Allstate's challenge to the District Court's exclusion of all evidence about the release: "[b]ecause Allstate's rescission of Jacobsen's release effectively voided the release from the beginning, it was not, as a matter of law, entitled to rely upon the legal effect of the release prior to its recession." *Opinion*, ¶ 51. The issue, however, was not the ultimately void status of the release. Rather, the focus of the trial was upon Allstate's motives in its handling of Jacobsen's claim, including the actions it had taken prior to rescinding the release. The truth about Allstate's actions included the impact that the signed release had upon its decisions. Good or bad, the jury should have received that whole truth, including evidence enlightening the jury about Allstate's thought process at the time Jacobsen sought their help after the release had

34

been signed but before it was rescinded. It is highly relevant and its omission unfairly prejudices Allstate. I believe this was likewise an abuse of discretion.

¶79 Finally, with regard to Issue 4, Allstate argues that the District Court erred by altering the language of the statute and using the word "claim" rather than "coverage" in its instruction to the jury about § 33-18-201(1), MCA. On that particular question, I also agree with Allstate. In ¶ 39, the Court simply offers good reasons for not following the statute. However, where the statute is declaring the substantive law of liability under the UTPA, I would follow it and require jury instructions to state the standards which the statute requires.

¶80 I dissent on these issues.


/S/ JIM RICE

35